Forbes Health System and Geoffrey M. Hosta and Associates, Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

610

Argued February 7, 1979, before President Judge Bowman and Judges Crumlish, Jr., Mencer, Blatt, DiSalle, Craig and MacPhail. Judges Wilkinson, Jr. and Rogers did not participate.

*William J. McCormick,* with him *Moorhead & Knox,* for petitioner.

*Betty F. Perry,* Assistant Attorney General, for respondent.

*James H. Stewart, Jr.,* and *Nauman, Smith, Shissler & Hall,* for amicus curiae, The Hospital Association of Pennsylvania.

Opinion by Judge MacPhail, June 28, 1979:

Forbes Health System (Forbes) and Geoffrey M. Hosta and Associates (Hosta) appeal to this Court

from a decision of the Department of Public Welfare (DPW) denying them Medicaid reimbursement to which, they contend, they are entitled.

The facts of this case are not in dispute. Forbes is a non-profit Pennsylvania corporation which, at the time this case arose, operated two hospitals with emergency rooms in the Pittsburgh area. Hosta is a California based association which retains local physicians to provide emergency room physician services for hospitals.

Since 1966, DPW, under the provisions of Title XIX of the Social Security Act, 42 U.S.C. §1396 et seq. (commonly referred to as Medicaid), has been making payments to providers of medical services to the categorically needy and the medically needy citizens of Pennsylvania. To implement the provisions of Section 443.3 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended,* 62 P.S. §443.3 relating to payments for out-patient services, DPW promulgated Section 9412 of its Medical Assistance Manual (Manual) setting forth the circumstances under which DPW would make Medicaid payments and prescribing the amounts of such payments. In the Manual, Section 9412 is under the general heading ''Clinics.''

At issue in the instant case are charges made for emergency room services to out-patients at the two hospitals operated by Forbes. Prior to August 1, 1974, Section 9412.76 of the Manual prescribed a $6.00 fee for emergency room services. As revised on August 1, 1974, Section 9412.76 reads as follows:

> *Emergency Room Service Fee* .... [$]9.00
>
> Independent, private physicians are permitted to bill for certain selected services performed in the emergency room of a hospital on an outpatient basis. When these services

are provided, the hospital will be reimbursed $9.00 for the use of the emergency room. ** (Refer to M.A. Memorandum No. 40).

Under date of January 15, 1973, M.A. Memorandum No. 40 was circulated among physicians, regional offices and county assistance offices by the DPW. The provisions of that memorandum which are pertinent to the present case are as follows:

*Payment for Emergency Room Services*

[P]rivate and independent physicians and group practice physicians providing Emergency Room services at hospitals may bill for certain surgical-medical procedures and treatment per the attached list, performed in the Emergency Room of a hospital. The list is subject to modification in the future when experience shows the need for the inclusion of more procedures.

. . . .

A separate $6.00 fee is allowed as reimbursement to the hospital for use of the Emergency Room by the Attending Physician, except for Out-patient Emergency Medical Care Treatment for which $10.00 is paid only to the Physician.

The revision of August 1, 1974, and the reference to M.A. Memorandum No. 40 had the effect of changing from $6.00 to $9.00 the reimbursement figure to hospitals provided in the memorandum.

On August 1, 1974, DPW also sent Memorandum No. 6, Supplement No. 25.4 to hospital clinics, independent clinics, regional offices and county assistance offices. The content of that memorandum is as follows:

In an effort to increase the availability of high quality clinic services for Medical Assist-

ance recipients, the Department is implementing two new payment provisions effective for services rendered on and after August 1, 1974.

9412.11 *Special Criteria for Clinic Participation*

Under this regulation specific quality standards have been developed as a condition for receiving a $3.00 increase in the clinic visit fee. Hospital out-patient clinics or approved physician group practices that have assumed the complete operation of a hospital outpatient clinic or emergency room, and independent neighborhood health clinics meeting the specific criteria outlined under Section 9412.11 will be eligible to receive a maximum fee of $9.00 per clinic visit. Clinics that do not meet these additional participation requirements will continue to receive a maximum of $6.00 per visit.

This new increased payment provision does not apply to Family Planning Clinics, Dental Clinics, Psychiatric Clinics, Methadone Maintenance Clinics, or Drug and Alcohol Clinics.

9412.76 *Emergency Room Service Fee*

Effective for services rendered on or after August 1, 1974, hospital Emergency Room Service Fee is increased from $6.00 to $9.00.

In addition, hospitals may also bill the $9.00 Emergency Room Service Fee when 'Outpatient Emergency Medical Care' is provided by an independent private physician.

On November 14, 1974, pursuant to an application from Forbes for a higher reimbursement for its emergency room services, the DPW Bureau of Medical Assistance (BMA) advised Forbes that *it* (Forbes) was eligible to receive the $9.00 per emergency room visit

for "compensable medical care provided under the direct supervision of a licensed physician."

Sometime prior to May 1, 1975, Forbes and Hosta negotiated an agreement to be effective May 1, 1975 by the terms of which Hosta would provide emergency room physicians to Forbes in facilities to be provided by Forbes. The agreement also provided that Hosta would charge patients treated by Hosta on a fee for service basis, that Hosta would be restricted in Medicaid cases to the reimbursement allowed by law and that Hosta would act under the agreement at all times as an independent contractor rather than as an employee of the hospital. It was also provided that Forbes would act as billing agent for Hosta where the bills to patients included as separate items hospital services and physicians' services. In late April of 1975, Forbes notified BMA that effective May 1, 1975, Hosta would be providing "physician coverage" for the emergency rooms operated by Forbes. Upon receipt of that information, BMA responded as follows:

This is in response to your letter of April 21, 1975, advising us that effective May 1, 1975, Doctor Geoffrey M. Hosta and Associates would be providing physician coverage for the emergency room at the Pittsburgh Hospital Division of the Forbes Hospital System.

We have determined that the criteria regarding physician coverage are being met. Therefore, Pittsburgh Hospital Division *remains* eligible to receive the $9.00 fee per emergency room visit.

*As an independent physician group practice providing emergency room services for Pittsburgh Hospital Division,* Doctor Geoffrey M. Hosta and Associates are eligible, effective May 1, 1975, to receive payment according to Item VIII of Manual Section 9411, Attending

Physician's Fee Schedule for Hospital Outpatient Emergency Room Surgical-Medical Procedures and Treatment.

Please contact us if we may be of further assistance to you. (Emphasis added.)

Between May 1, 1975 and March 28, 1977, Forbes billed DPW for emergency room services furnished to Medicaid patients and Hosta also billed DPW for physicians' services rendered to those patients in Forbes' emergency rooms. DPW paid the bills. On March 28, 1977, BMA sent a letter to Forbes advising them that their previous authorization of payments to Hosta was "made in error" and that it was necessary to "retract" the authorization because "The fees in Medical Assistance Memorandum No. 40 are available only to private and independent physicians." The letter went on to say that:

If a physician or physician group has entered into an agreement with a hospital, whereby the physicians agree to provide emergency room staffing for the hospital, the physicians cannot be considered to be private and independent and they cannot bill the Medical Assistance Program for their emergency room services.

Both Forbes and Hosta objected to this ruling by BMA and filed an appeal with DPW. After a hearing, the DPW filed the adjudication and order appealed from here.

After an exhaustive review of all the relevant documents and testimony, we conclude that the hearing examiner's adjudication is erroneous as a matter of law. The adjudication proceeds on the basis that when Forbes received an increase from $6.00 to $9.00 after August 1, 1974, the additional $3.00 was to cover physicians' fees rendered in the emergency room. As we have noted however, in 1973 private and independent physicians *and* group practice physicians providing emergency room services at hospitals were authorized

to bill separately for their services according to a fee schedule. Additionally a "separate" $6.00 fee was allowed to the hospital. It will be remembered that in November of 1974, when Forbes' fee was increased to $9.00, Hosta was not even in the picture. It is significant that in June of 1975 when BMA acknowledged the arrangement between Forbes and Hosta, BMA also advised Forbes that it would *"remain"* eligible for $9.00 per emergency room visit and that since Hosta was an "independent physician group practice providing emergency room services" to Forbes, Hosta was entitled to bill separately for its services under Item VIII of Manual Section 9411.

Now, in order to justify the withdrawal of its previous authorization to Hosta, DPW argues that its first interpretation of its own regulations was simply erroneous and that it never intended to authorize duplicate payments for emergency room services. We see no duplication. There is nothing in any of the regulations or memoranda in the record of this case which prohibits Hosta from making a separate charge for physicians' services furnished at Forbes' emergency room. On the contrary, our reading of the regulations and memoranda would indicate that such charges are specifically authorized. DPW contends, and the examiner agrees, that because of the agreement between Forbes and Hosta, Hosta is no longer "private and independent" but, rather, assumes the position of a staff physician. The problem with this reasoning is that the agreement between Hosta and Forbes specifically provides (paragraph 16) that emergency room physicians shall *not* have admitting privileges to the hospital. Therefore, Hosta could hardly be considered "staff." Moreover, as we have previously noted, since January 15, 1973, group practice physicians providing emergency room services at hospitals were permitted to bill for their professional services and BMA in 1975 determined that Hosta fell

within the category of group practice physicians providing emergency room services to a hospital. The agreement between Forbes and Hosta changed nothing except the quality of medical services at Forbes which was certain to be improved by virtue of that agreement.

Because there was no legal justification for the change in position by DPW with regard to payments due Forbes and Hosta, we will reverse the order of DPW and remand for a determination of those payments.

## ORDER

AND Now, this 28th day of June, 1979, the order of the Department of Public Welfare, dated November 14, 1977, is reversed and this case is remanded for a determination of Medicaid payments due Forbes Health System and Geoffrey M. Hosta and Associates since March 28, 1977.