422 A.2d 480

COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant,

v.

FORBES HEALTH SYSTEM and Geoffrey M. Hosta and Associates.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant,

v.

EMERGENCY ASSOCIATION OF SOUTHWESTERN PENNSYLVANIA.

Supreme Court of Pennsylvania.

Argued Sept. 25, 1980.

Decided Oct. 31, 1980.

78

John A. Kane, Asst. Atty. Gen., Dept. of Public Welfare, Harrisburg, for appellant.

William J. McCormick, Thomas E. Boyle, Moorhead & Knox, Pittsburgh, for Forbes.

Lee P. Symons, Washington, for Emergency Ass'n of Southwestern Pennsylvania.

James H. Stewart, Nauman, Smith, Shissler & Hall, Harrisburg, for Hospital Ass'n of Pennsylvania Amicus Curiae.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant, Department of Public Welfare of the Commonwealth of Pennsylvania (DPW), appeals from two separate orders of the Commonwealth Court reversing appellant's denial of Medicaid payments to appellee Geoffrey M. Hosta and Associates and appellee Emergency Association of Southwestern Pennsylvania. *Forbes Health System and Geoffrey M. Hosta and Associates v. Commonwealth, DPW*, 43 Pa.Cmwlth. 609, 403 A.2d 625 (1979); *Emergency Association of Southwestern Penn. v. Commonwealth, DPW*, 46 Pa.Cmwlth. 599, 407 A.2d 91 (1979). At issue is whether, under Medical Assistance regulations and the accompanying statutes, private independent physician groups which contract with hospitals to provide emergency room physician coverage are entitled to Medicaid reimbursement for services rendered to Medical Assistance patients while on emergency room duty, even though these hospitals receive Medicaid reimbursement for all emergency room services, including physician coverage. Because these cases present similar facts and an identical issue of law, they have been consolidated for purposes of appeal. We conclude that the Commonwealth Court exceeded the scope of judicial review of the determination of DPW and that the regulations as interpreted by DPW are valid under state and federal law. Thus, we reverse the orders of the Commonwealth Court.

Appellee Geoffrey M. Hosta and Associates, a California–based association, and appellee Emergency Association of Southwestern Pennsylvania, a professional corporation, are independent physician groups which have contracted to provide emergency room physician services at certain Pittsburgh area hospitals. Appellee Hosta contracted with appellee Forbes Health System, a non–profit Pennsylvania corporation, to provide the physician component of emergency cy room services at two hospitals operated by Forbes.[1] Similarly, appellee Emergency Association contracted with three

1. Pittsburgh Health Center and Columbia Health Center.

hospitals[2] to provide physician services in their emergency rooms.

For almost two years DPW paid claims submitted on behalf of appellees Hosta and Emergency Association for emergency room physician services rendered to Medical Assistance patients, and also paid claims for these same services submitted by the hospitals with which they contracted. In March 1977, by letter to appellee Forbes Health System, the Bureau of Medical Assistance (BMA) of DPW terminated payments to appellee Hosta and, similarly, by letter to Monongahela Valley Hospital, Inc., BMA terminated payments to appellee Emergency Association. It stated that the department's authorization of double payments for a single service had been made in error.[3] In subsequent letters BMA explained that Medical Assistance payments to hospitals for emergency room visits constituted full payment for all emergency services, including those of emergency room physicians, and that payment to physicians for these services was therefore a contractual matter between the hospitals and physicians. In a letter to Monongahela Valley Hospital, Inc., BMA stated, "the emergency room fee per visit is available either to the hospital or to a physician group practice that has assumed the complete operation of the emergency room, but not to both." However, because appellant had been in error in authorizing payment to appellees Hosta and Emergency Association, appellant did not seek restitution of payments made.

Appellees Hosta and Emergency Association separately appealed the determination of BMA to the Hearing and Appeals Unit of DPW. Appellee Forbes joined appellee Hosta in its appeal, alleging that the agency's determination would require renegotiation of its contract with Hosta to provide payment to Hosta for emergency room physician

2. Monongahela Valley Hospital, Inc., Charleroi Division and Monongahela Division, and St. Clair Memorial Hospital.

3. In the appeal of appellees Hosta and Forbes, the hearing examiner found that, during the two year period of erroneous payments, BMA did not have its billing and payment procedure computerized but rather monitored the program manually.

services rendered to Medical Assistance patients. The appeal of appellees Hosta and Forbes was heard on July 14, 1977 and the appeal of appellee Emergency Association was heard on February 17, 1978, each before a different hearing examiner. Both hearing examiners affirmed the decision of BMA denying separate or additional payment for emergency room physician services to appellees Hosta and Emergency Association. The Commonwealth Court reversed, holding that the interpretation by DPW of its own regulations was erroneous as a matter of law.

In reviewing an administrative agency's interpretation of its own regulations, courts are governed by a two step analysis. First, "[i]n construing administrative regulations, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) quoting *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Second, the regulations "must be consistent with the statute under which they are promulgated." *Id.* at 873, 97 S.Ct. at 2156. See also *Commonwealth v. Beck Electric Construction, Inc.*, 485 Pa. 604, 403 A.2d 553 (1979). The Commonwealth Court failed to follow this analysis and instead erroneously substituted its own independent reading of the regulations. The court therefore never reached the only question validly at issue: whether the regulations as interpreted by DPW are consistent with the statutes they implement.

I

The hearing examiners found that, pursuant to Medical Assistance Manual Section 9412.11 and Section 9412.76, hospitals with which appellees Hosta and Emergency Association contracted were entitled to Medicaid reimbursement for emergency room services. This finding was not disturbed by the Commonwealth Court and is not challenged on appeal.

The Commonwealth Court, however, rejected the hearing examiners' findings that additional payment to appellees Hosta and Emergency Association was not authorized. In so doing the court rejected the examiners' interpretation of Medical Assistance Manual Sections 9412.11 and 9412.76, and held that separate charges by hospitals and emergency room physicians for the same services are specifically authorized. *Forbes Health System v. Commonwealth, DPW,* 43 Pa. Cmwlth. at 616, 403 A.2d at 628. Because, in fact, neither Section 9412.11 nor 9412.76 specifically authorizes separate charges, and because the agency's interpretation is not plainly inconsistent with the wording of the regulations, the interpretation given by DPW to its own regulations must be upheld.

Section 9412.11, effective August 1, 1974, provides: [4]

"9412.11    *Special Criteria for Clinic Participation*

Under this regulation specific quality standards have been developed as a condition for receiving a $3.00 increase in the clinic visit fee. Hospital outpatient clinics or approved physician group practices that have assumed the complete operation of a hospital outpatient clinic or emergency room, and independent neighborhood health clinics meeting the specific criteria outlined under Section 9412.-11 will be eligible to receive a maximum fee of $9.00 per clinic visit. Clinics that do not meet these additional participation requirements will continue to receive a maximum of $6.00 per visit.

This new increased payment provision does not apply to Family Planning Clinics, Dental Clinics, Psychiatric Clinics, Methadone Maintenance Clinics, or Drug and Alcohol Clinics."

This section clearly speaks in the alternative.[5] Either "[h]ospital outpatient clinics *or* approved physician group practices

4.  Section 9412.11 was revised in February 1978 to provide for a maximum payment of a $12.00 fee.

5.  DPW determined that an emergency room falls within the accepted *definition of an "outpatient clinic."* This finding was properly left undisturbed by the Commonwealth Court. It is well settled that

that have assumed the complete operation of a hospital outpatient clinic or emergency room (emphasis added)," are eligible for the $9 clinic visit fee. Thus Section 9412.11 plainly does not authorize separate charges by both hospitals and emergency room physicians. As both appellee Hosta and appellee Emergency Association contracted to provide only the physician component of hospital emergency rooms, and not to assume their complete operation, substantial evidence supports the conclusion of DPW that under Section 9412.11 only the contracting hospitals, and not the contracting physician groups, are eligible for reimbursement.

Notwithstanding Section 9412.11, the Commonwealth Court found that appellees Hosta and Emergency Association were entitled to payment pursuant to Section 9412.76, which, as revised on August 1, 1974, provides:

"9412.76 *Emergency Room Service Fee* ....... 9.00

Independent, private physicians are permitted to bill for certain selected services performed in the emergency room of a hospital on an outpatient basis. When these services are provided, the hospital will be reimbursed $9.00 for the use of the emergency room. (Refer to M.A. Memorandum No. 40)."

Medical Assistance Memorandum No. 40, incorporated by reference, is entitled "Revisions to Physician's Fee Schedule–Payment for Certain Surgical–Medical Procedures." It states in pertinent part:

"*Payment for Emergency Room Services*

Also effective the same date [January 1, 1973], private and independent physicians and group practice physicians providing Emergency Room services at hospitals may bill for certain surgical–medical procedures and treatment per the attached list, performed in the Emergency Room of a hospital. The list is subject to modification in the future

" '[t]he meaning to be given to terms of art in an agency regulation is particularly within the competence of that agency.' " *Commonwealth v. Beck Electric Construction, Inc.*, 485 Pa. at 614, 403 A.2d at 558, quoting *State Dental Council and Examining Board v. Pollock*, 457 Pa. 264, 276, 318 A.2d 910, 917 (1974).

when experience shows the need for the inclusion of more procedures.

The reimbursement to Physicians for Outpatient Emergency Room Services fills a gap in our payment structure under the Medical Assistance Program. Also, such payments should provide an incentive to the physicians and hospitals to avoid unnecessary hospitalization, resulting in reduced hospital costs."

DPW has interpreted Section 9412.76 and accompanying Memorandum No. 40 as provisions for (1) payment to private, independent physicians who, when not on emergency room duty, use a hospital's emergency room to perform certain enumerated surgical procedures on their private Medical Assistance patients, and (2) payment to the hospital for the physician's use of the emergency room to perform these procedures. The hearing examiners properly found that appellees do not come within this interpretation of the regulations. Although the examiners found that appellees Hosta and Emergency Association are private physician groups independent of the hospitals with which they contract, the examiners found that when appellees are on emergency room duty they are not acting in a private capacity servicing private patients.

Appellees do not contend that they have performed surgical procedures on private patients in hospital emergency rooms. Rather, appellees claim that Section 9412.76 and accompanying Memorandum No. 40 should be interpreted as authorization for reimbursement even when physicians are providing general emergency room coverage. This interpretation was rejected by the hearing examiners and should not have been adopted by the Commonwealth Court. Such an interpretation would produce an incongruous and absurd result: a single fee payment would be received by hospitals which utilize their own staff to provide full emergency room coverage; a single fee payment would be received by independent physician groups that contract to assume complete operation of a hospital emergency room; but two fee payments would be received where, as here, a hospital provides

support services and contracts with an independent physician group to provide physician coverage for its emergency room. In all three instances identical services are provided. Yet, under appellees' theory, when two organizations combine to provide these services they should be permitted to obtain payment for twice the services' value, simply because there are two providers instead of one.

■ The interpretation of DPW is consistent with the language of Section 9412.76, the policy enunciated in Memorandum No. 40, and the administrative finding that when Memorandum No. 40 was issued it was sent to physicians and not to hospitals.[6] Since the administrative interpretation is not plainly erroneous and is consistent with the regulations, we accept DPW's reading as correct.[7]

6. In the appeal of Emergency Association, the hearing examiner found that "[p]rior to . . . [January 1, 1973, the effective date of Memorandum No. 40] Medical Assistance only paid private physician services, nursing homes and patient hospital services. This was an expansion of benefits allowing private independent physicians to bill for a limited number of surgical procedures if they directly saw a MA [Medical Assistance] patient as a private patient in a hospital emergency room."

7. On April 3, 1980, DPW rescinded Memorandum No. 40 and adopted certain revised Medical Assistance regulations. Contrary to the assertion of appellee Emergency Association, however, these revisions do not support a finding that either prior or present regulations should be construed to require payment by DPW for the same emergency room service to both a hospital and its contracting physician group. Medical Assistance Manual Section 9412.41, now in effect, provides:

"§ 9412.41. Hospital emergency rooms.

(a) The Department recognizes two components of payment for hospital emergency room services: the physician services component and the hospital support services component. Accordingly, the Department will pay the individual components to the hospital and or the physician depending upon the financial arrangement between the hospital and the physician rendering the service.

(b) The hospital shall elect only one of the following three arrangements for payment of services rendered through an emergency room:

.     .     .     .     .

(2) Arrangement II–Emergency room services provided by contract physicians. The hospital provides the support services and pays contract physicians to provide physician coverage. Under this arrangement, only the hospital is eligible to bill the fee for the

## II

Because the Commonwealth Court erred in rejecting the interpretation by DPW of its own regulations it did not reach the issue we now address: whether DPW's interpretation is valid in light of state and federal law pursuant to which its regulations were promulgated.

By statute,[8] Pennsylvania participates in the Medical Assistance Program, Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. Under this jointly financed program, Pennsylvania has developed a State Plan for Medical Assistance as required by federal law.[9] Appellees contend that DPW's interpretation of its regulations, prohibiting separate payments to physicians who provide emergency room coverage when emergency room service payments are also made to the contracting hospitals, is in violation of 42 U.S.C. § 1396a(a)(32), the Pennsylvania Public Welfare Code, 62 P.S. § 443.3, and the Pennsylvania State Plan for Medical Assistance.

Appellees' contentions are without merit. They are based on the erroneous premise that the regulations as interpreted by DPW deny appellees payment for the emergency services they provide Medical Assistance patients when on emergency room duty. However, as found by the administrative hearing examiners, payment for physicians' services is included in the payment for emergency room services made to the contracting hospital. This conclusion is reasonable, particularly given that one of the accreditation standards employed by the Joint Commission on Accreditation of Hospitals (JCAH)[10] is that emergency room service must include the availability of physician services twenty–four hours a day. Thus, as DPW determined, appellees should seek pay-

support services component and the physician services component. . . . "

8. 62 P.S. § 441.1 et seq. (Supp.1980–81).

9. 42 U.S.C. § 1396a; 42 C.F.R. § 440.210 et seq. (1978).

10. 42 U.S.C. § 1395bb requires hospitals to meet the standards established by JCAH.

ment from the hospitals with which they contract and which have received full payment for all aspects of emergency room services rendered Medical Assistance patients.

None of the provisions cited by appellees provide that payment for physician emergency room services must be paid directly to the physician group on duty. 42 U.S.C. § 1396a(a)(32)(A)(ii) provides:

"(a) A State plan for medical assistance must–

. . . . .

(32) provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or power of attorney or otherwise except that–

(A) in the case of any care or service provided by a physician, dentist, or other individual practitioner, such payment may be made

. . . . .

(ii) (where the care or service was provided in a hospital, clinic, or other facility) to the facility in which the care or service was provided if there is a contractual arrangement between such physician, dentist, or practitioner and such facility under which such facility submits the bill for such care or service . . . ."

This statutory requirement is restated in the Pennsylvania State Plan § 4.21 which provides:

"4.21 *Prohibition against Reassignment of Claims to Benefits*

Except as provided in section 4.20 of this plan payment for care or services provided to an individual by any provider not reimbursed on a reasonable cost basis is made only to the provider or, in appropriate cases, to:

. . . . .

a facility in which the care or service was provided, with which he has a contractual arrangement whereby the facility is to submit the claim for reimbursement . . . ."

Appellees argue that the contracts entered into by Hosta and Emergency Association to provide hospital emergency room coverage did not specifically provide that the hospitals would bill DPW for their services, and therefore Hosta and Emergency Association are statutorily entitled to separate and additional payment. Neither the statute nor the State Plan, however, requires a writing executed between the facility and its physician group authorizing the facility to bill DPW. For DPW to make lawful payment directly to a facility for physicians' services, it is sufficient that there is a contractual arrangement between the facility and physicians and that the facility does, in fact, bill DPW for these services.

Appellees also rely upon the Public Welfare Code, 62 P.S. § 443.3,[11] and its federal counterpart, 42 U.S.C.

11. 62 P.S. § 443.3 (Supp.1980–81) provides:
    "§ 443.3 Other medical assistance payments
    Payments on behalf of eligible persons shall be made for other services, as follows:
    (1) Rates established by the department for outpatient services as specified by regulations of the department adopted under Title XIX of the Federal Social Security Act consisting of preventive, diagnostic, therapeutic, rehabilitative or palliative services; furnished by or under the direction of a physician, chiropractor or podiatrist, by a hospital or outpatient clinic which qualifies to participate under Title XIX of the Federal Social Security Act, to a patient to whom such hospital or outpatient clinic does not furnish room, board and professional services on a continuous, twenty-four hour a day basis.
    (2) Rates established by the department for (i) other laboratory and X–ray services prescribed by a physician, chiropractor or podiatrist and furnished by a facility other than a hospital which is qualified to participate under Title XIX of the Federal Social Security Act, (ii) physician's services consisting of professional care by a physician, chiropractor or podiatrist in his office, the patient's home, a hospital, a nursing home or elsewhere, (iii) the first three pints of whole blood, (iv) remedial eye care, as provided in Article VIII consisting of medical or surgical care and aids and services and other vision care provided by a physician skilled in diseases of the eye or by an optometrist which are not otherwise available under this Article, (v) special medical services for school children, as provided in the Public School Code of 1949, consisting of medical, dental, vision care provided by a physician skilled in diseases of the eye or by an optometrist or surgical care and aids and services which are not otherwise available under this article."
    [Footnotes omitted.]

§ 1396d(a)(2)(A) and (5),[12] which enumerate specific services for which medical assistance payments must be made. These provisions, however, do not specify the party to whom these payments are to be made, and certainly do not require that the physician component of an emergency room visit be paid separately from other emergency room costs.

### III

As we have concluded that the interpretation by DPW of its own Medical Assistance regulations pertaining to payment of physician emergency room services is valid under federal and state law, the only remaining issue is whether the application of this interpretation to appellees violates either the Commonwealth Documents Law, 45 P.S. § 1201 et seq., or Fourteenth Amendment due process.

The Commonwealth Documents Law requires that, except in certain specified instances, an agency must publish its administrative regulations and provide an opportunity for public comment before such regulations take effect. Since DPW's interpretation and its action in terminating payments to appellees Hosta and Emergency Association are in accordance with existing published regulations, the Commonwealth Documents Law has not been violated. It cannot validly be inferred that because DPW made payments to appellees it was necessarily acting under a different interpretation of its Medical Assistance regulations which it changed without notice. Rather there is substantial evidence that these payments were made in error and that the error was remedied immediately upon its discovery.

12. 42 U.S.C. § 1396d(a)(2)(A) and (5) (Supp.1980) provides:
"§ 1396d. Definitions–Medical assistance
For purposes of this subchapter–
(a) The term 'medical assistance' means payment of part or all of the cost of the following care and services

.  .  .  .  .

(2)(A) outpatient hospital services,

.  .  .  .  .

(5) physicians' services furnished by a physician (as defined in section 1395x(r)(1) of this title), whether furnished in the office, the patient's home, a hospital, or a skilled nursing facility, or elsewhere . . . ."

Appellees Hosta and Emergency Association, however, did have a due process right to notice and an opportunity to be heard regarding the termination of Medical Assistance payments once these benefits had been conferred by the State, even if conferred erroneously. This due process right has been met by a full administrative hearing accorded to appellees before the Hearing and Appeals Unit of DPW. These hearings were held reasonably promptly after the termination of payments. Due process does not require that appellees have been afforded a pre–termination hearing. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). See also *Pennsylvania Coal Mining Ass'n v. Insurance Dep't.*, 471 Pa. 437, 370 A.2d 685 (1977).

The orders of the Commonwealth Court are reversed.