Klingerman Nursing Center, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 3, 1983, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*Alvin Luschas,* with him *Charles B. Pursel, Derr, Pursel & Luschas,* for petitioner.

*Jeffrey Gonick,* Assistant Counsel, for respondent.

OPINION BY JUDGE BLATT, April 18, 1983:

Klingerman Nursing Center, Inc. (Klingerman) appeals here an adjudication of the Department of Public Welfare (DPW) which reversed the Hearing Examiner's recommendation to sustain Klingerman's appeal from the annual nursing home audit made by the DPW.

Klingerman is a skilled nursing care facility entitled to cost reimbursement from the DPW. On July 1, 1977, the DPW changed its method of computing such reimbursements. Per diem costs were previously calculated on the total allowance cost of patient care, including depreciation and interest. Subsequently, however, the per diem rate was calculated on the net cost, derived from net operating costs plus an additional reimbursement representing depreciation and interest. Klingerman's fiscal year ran from April 1, 1977 to March 31, 1978, and, because the method of calculation had changed during the fiscal year, Klingerman requested a split audit in which costs would be arrived at by the old method from April 1, 1977 to June 30, 1977 and by the new method from July 1, 1977 to March 31, 1978. The DPW performed the requested split audit as well as a unified audit in which it averaged the costs over a 12-month period. The Hearing Examiner found that, in the first three months (25% of the audit period), Klingerman incurred only 20% of its total costs. The use of averaging in the unified audit, therefore, had the effect of placing Klingerman above the ceiling rate for the three months prior to July 1, 1977 and under the ceiling rate for the remaining 9 months of its fiscal year. According to the undisputed testimony of Klingerman's accountant, the use of the unified audit, as opposed to the split audit, reduced the total amount of reimbursement by $24,500. The DPW, however,

accepted and used the unified audit. Klingerman then appealed. The Hearing Examiner recommended use of the split audit, holding that the unified audit had "artifically manipulated the cost incurred by [Klingerman] in providing patient care from a reimbursable period to a non-reimbursable period." The Director chose not to follow the Examiner's recommendation and denied the appeal without stating any reasons. Klingerman next perfected his appeal to this Court. The DPW was then given an opportunity to complete the record, and it submitted a brief statement of the reasons for its previous order. This order is now under review here.

Our scope of review of orders of the DPW is limited to a determination of whether or not the adjudication was in accordance with the law, whether or not any constitutional rights were violated, and whether or not the findings of fact were supported by substantial evidence. *Spicer v. Department of Public Welfare,* 58 Pa. Commonwealth Ct. 558, 428 A.2d 1008 (1981). And review of the Hearing Examiner's recommendation by the Director of the Office of Hearings and Appeals is governed by 55 Pa. Code §275.4(H)(4)(i) which states in pertinent part that no findings of facts made by the Hearing Examiner will be subject to reversal.

The DPW seeks to uphold the adjudication by reference to the DPW Manual for Allowance Cost for Skilled Nursing and Intermediate Care Facilities (Manual), particularly Section VI[1] which provides in pertinent part that:

> An auditor may validate the costs and statistics of the *annual report* by an on-site visit to the facility. The auditors will then certify to

---

[1] Found at 5 Pa. Bull. 2934 (1975).

the Department the allowable, reasonable costs for the facility as a basis for calculating a per diem rate and an *annual adjustment*. Based on this certification and total, interim payments received by the facility, the Department will compute any adjustments due the facility or due the Department for the *fiscal year*. The Department will notify the facility of the *annual adjustment* within 120 days after receipt of the *annual cost report*. (Emphasis added.)

The DPW places great emphasis on this regulation's frequent use of the word "annual" and argues that the unified audit is appropriate inasmuch as it uses one calculation method for one full year. It also argues that its interpretation of the regulation's meaning is entitled to controlling weight. *See Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 422 A.2d 480 (1980). Klingerman argues, on the other hand, that this regulation does not address what type of audit is appropriate but only requires that some type of audit be performed annually. Klingerman cites to Section 443.1(3) of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §443.1(3) which provides:

The following medical assistance payments shall be made in behalf of eligible persons whose institutional care is prescribed by physicians. . . .

(3) Rates on a *cost-related basis* established by the department for skilled nursing home or intermediate care in a non-public nursing home, when furnished by a nursing home licensed or approved by the department and qualified to participate under Title XIX of the Federal Social Security Act. (Emphasis added.)

The mandate of this statute, argues Klingerman, is that reimbursement be made on a cost-related basis and that, inasmuch as the unified audit does not correctly reflect the facility's costs, the DPW here is not in compliance with the statute. Klingerman also cites to the Manual, Section II[2] for a definition of "annual adjustment" which provides:

> *Annual Adjustment*—The difference between the interim payments during the year to the facility and the actual audited *allowable per diem costs* at the end of the facility's fiscal year. (Emphasis added.)

With regard to this definition, it is urged that, because the per diem rate was changed during the fiscal year, the split audit will more readly discern the allowable per diem costs. Obviously, an audit for adjustment purposes is annual, but Klingerman argues that the yardstick for reimbursement is the per diem costs and that a truly accurate reflection of costs can be ascertained only if the split audit is utilized.

There is one other section of the Manual which we believe is also applicable here. It is Section IV[3] which provides in pertinent part:

> The standards listed below are established to provide guidance in determining whether certain, selected cost items will be recognized as allowable costs. In the absence of specific instructions or guidelines in this Manual, facilities will follow the principles and instructions in the Medicare Provider Reimbursement Manual contained in HIM-15.

And, finding that the Manual did not cover this specific point, the Hearing Examiner in this case

---

2 Found at 5 Pa. Bull. 2929 (1975).

3 Found at 5 Pa. Bull. 2931 (1975).

turned to the Medicare Provider Reimbursement Manual HIM-15, Section 2102.1[4] which states that:

> Reasonable costs of any services are determined in accordance with regulations establishing the method or methods to be used, and the items to be included.
>
> Reasonable cost takes into account both direct and indirect costs of providers of services, including normal standby costs. The *objective is that under the methods of determining costs, the costs with respect to individuals covered by the program will not be borne by others not so covered,* and the costs with respect to individuals not so covered will not be borne by the program. (Emphasis added.)

The Hearing Examiner stated that "it is the intent, if not the mandate, of PRM-1 §2101.1 to reimburse a facility for the reasonable costs of providing patient care. In the instant case, this can only be accomplished through the use of the split audit." In addition, we believe that the undisputed testimony by Klingerman's accountant to the effect that the split audit is considered a generally accepted accounting practice, is also persuasive.[5] We further believe, that the DPW's interpretation of its regulations is consequently inconsistent with its other regulations and with Section 443.1 of the Code. We need not and will not, therefore, give it controlling weight. *Forbes Health System.*

We will reverse the order of the DPW and direct it to compute the reimbursement due to Klingerman based on the split audit originally conducted.

---

4 These regulations can be found in the *Medicare & Medicaid Guide* (CCH) §5858 (1980).

5 *See* 42 C.F.R. §447.294 (1978).

ORDER

AND NOW, this 18th day of April, 1983, the order of the Department of Public Welfare in the above-captioned matter is hereby reversed and the Department of Public Welfare is hereby directed to reimburse the appellant based on the split audit calculations. Jurisdiction relinquished.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent. As the majroity writes, DPW's regulations require that the expenses of nursing home facilities be submitted in the form of an *annual* report; that the *annual* report be validated by an *annual* audit; and that, the *annual* adjustment is to be computed on the basis of the *annual* audit. DPW interprets its regulations to prohibit the split-audit proposed by the petitioner nursing home. In my view, this interpretation is entirely reasonable and under the law, an agency's interpretation is controlling unless it is clearly inconsistent with the underlying statute, or with other regulations. *Department of Public Welfare v. Forbes Health Systems,* 492 Pa. 77, 422 A.2d 480 (1980).

The majority asserts that the DPW's interpretation is inconsistent with the requirement of the Public Welfare Code that the rate of state reimbursement be made on a ''cost-related basis.'' However, we are given no reason why the method approved by DPW—averaging the petitioner's costs over a whole of its fiscal year; that is, annually—will result in a rate of reimbursement unrelated to costs. Indeed, the petitioner nursing home does not contend that the rate of reimbursement calculated by the DPW is unrelated to its costs; it contends merely that a split-audit will result in an assertedly more accurate picture of its costs

and, incidentally, a more favorable adjustment. The Code provision requiring that reimbursement be cost-related does not conflict with DPW's annual audit requirement simply because some other method aguably produces a finer adjustment in particular circumstances. The Code prohibits only the use of a method unrelated to costs. The accounting method used by DPW resulted in this case in a rate of reimbursement related to the petitioner's costs of the nursing home and is, therefore, perfectly regular.

The absence of any statute or regulation provision clearly inconsistent with the DPW's interpretation should require that DPW's order be affirmed.