Consumers Life Insurance Company, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Argued September 11, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, BARRY and COLINS.

*Dennis J. Bonetti, Peters & Wasilefski,* for petitioner.

*Beth C. Sheligo,* Assistant Counsel, for respondent.

OPINION BY JUDGE ROGERS, November 8, 1984:

The Consumers Life Insurance Company (petitioner) has filed a petition for review of an order of the Pennsylvania Insurance Department (department), the effect of which was to uphold the action of the insurance commissioner disapproving the petitioner's proposed schedule of premium rates for credit life insurance for the year 1984.[1] The petitioner's proposed rate schedule was disapproved as having been calculated contrary to the department's regulation at 31 Pa. Code §73.23.

Section 7(a) of the Model Act for the Regulation of Credit Life Insurance and Credit Accident and Health Insurance (Model Act), Act of September 2, 1961, P.L. 1232, *as amended,* 40 P.S. §1007.7(a), provides that all proposed premium rates for credit life insurance must be submitted to the insurance commissioner for approval prior to use. Section 7(b) of the Model Act, 40 P.S. §1007.7(b) requires the insurance commissioner, in deciding whether to approve or disapprove premium rates, to give consideration to the insurer's past and prospective loss experience and to allow a reasonable margin for underwriting profit. By Section 12 of the Model Act, 40 P.S.

---

[1] For no doubt good, but unexplained, reasons the rate year of credit life companies begins on December 1 and ends on November 30 of the following year. To make the opinion easier to read, the rates in effect for the period December 1, 1983 through November 30, 1984 will be referred to as the 1984 rates; those in effect from December 1, 1982 through November 30, 1983, as the 1983 rates; and so on.

§1007.12, the insurance commissioner is empowered to promulgate such rules and regulations as he finds necessary for the supervision of the Model Act.

A department regulation at 31 Pa. Code §73.25 requires that each insurer, as part of its filing of a proposed schedule of premium rates, determine its actual case ratio, defined at 31 Pa. Code §73.25 as the product of its actual ratio of claims incurred to premiums earned at prima facie rates over an experience period, multiplied by its Basic Loss Ratio.[2] When the insurer's actual case ratio, thus calculated, is within a range designated in the department's Credibility Table, its rates for the succeeding year will be those specified in the department's general rate standards. If, however, the insurer's actual case ratio is outside the range of the Credibility Table, additional calculations, not necessary here to describe, are performed to determine its deviation rate factor. When the insurer's deviation rate factor for its proposed rates is less than 5% higher or lower than its deviation rate factor based on the current approved rates, no change from the current approved rates will be allowed. If, however, the deviation rate factor for the proposed rates is more than 5% higher or lower than its deviation rate factor based on current approved rates, then the current approved rates will be adjusted up or down for the ensuing year.

In 1981 the petitioner experienced a large increase in the amount of credit life insurance claims filed. In June, 1982, the petitioner filed its schedule of premium rates proposed for 1983, using data only

---

[2] Neither the procedure for determining an insurer's Basic Loss Ratio nor the department's Credibility Table needs description in this opinion. The former is set forth at 31 Pa. Code §73.22 and the latter appears at 31 Pa. Code §73.23.

from 1981, its then most recent experience year. It obtained a deviation rate factor of 81%. Because this rate factor was more than 5% above its deviation rate factor based on its 1982 approved rates, the department approved a 10% increase in premium rates for the year 1983. In 1982 the petitioner experienced a decrease in the amount of credit life insurance claims filed. In order to minimize the effect of this decrease on its 1984 premium rates, the petitioner used data of both its 1981 and 1982 experience years, and obtained a deviation rate factor of 77% which, if accepted, would have permitted its 1983 rates to remain in effect for 1984. The department, however, recalculated the petitioner's deviation rate factor using data only from the petitioner's 1982 experience year and arrived at a deviation factor of 74%. Because this deviation rate factor was more than 5% less than its 1983 deviation rate factor, the department approved premium rates for charge by the petitioner in 1984 lower than those which the petitioner had proposed. This is the determination under appeal in this case.

The term "experience period" which, as we have seen, is crucial to the determination of an insurer's actual case ratio and consequently of whether its proposed premium rates are to be approved or disapproved, is defined at 31 Pa. Code §73.21 as:

The most recent three experience years or a lower number of full years which produces a *prima facie* earned premium volume . . . [of $1,000,001 or more]. (Emphasis in original.)

The petitioner contends that because it attained a prima facie earned premium volume of $1,000,001 or more in each of its three most recent experience years, 1980, 1981 and 1982, it has, under the definition at 31 Pa. Code §73.21, the option of selecting data from one

or any combination of more than one of its three most recent years which will afford it the highest possible rates. The department, on the other hand, argues that it properly interpreted its definition to require the petitioner to use data only from its most recent year or years in which sufficient (that is, $1,000,001 or more) premium volume is produced, in this case the year 1982.

An administrative agency's interpretation of its own regulation is of controlling weight unless it is plainly erroneous or inconsistent with the regulation. Also, the regulation must be consistent with the statute under which it was promulgated. *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980).

We find that the department's interpretation of the term experience period is neither plainly erroneous nor inconsistent with the Model Act nor with the regulation at 31 Pa. Code §73.23. The purpose of the Act and the regulation is to assure that the rates charged for credit life insurance are fair to both the consumer and the insurer. As mentioned, the Model Act specifically directs the insurance commissioner in determining whether to approve or disapprove a proposed rate schedule to consider the insurer's past and prospective loss experience and allow for a reasonable margin of profit. The department has done this by requiring an insurer to use data from its three most recent experience years or a lower number of years which produce an earned premium volume of $1,000,001 or more. The petitioner in this case had an earned premium volume of $1,000,001 or more in each of its three most recent experience years. The department's interpretation of the term ''experience period'' to require the petitioner to use as a lower number of these years only its most recent year is

clearly consistent with the regulation. Surely, neither the Act nor the regulation was intended to give an insurer the option of selecting data from experience years which will produce the highest premium rates. This interpretation would inevitably result in the production of unreasonable margins of profit, rather than the reasonable margins of underwriting profits described in the Model Act.

Order affirmed.

## ORDER

AND Now, this 8th day of November, 1984, the order of the Insurance Department of the Commonwealth of Pennsylvania in the above-captioned matter is affirmed.