Michael Manor, Inc., Guilford Convalessarium, Inc., Petitioner v. Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued January 29, 1985, before Judges ROGERS and CRAIG, and Senior Judge BARBIERI, sitting as a panel of three.

*Gordon A. Roe, Kain, Brown & Roberts,* for petitioner.

*Bruce G. Baron,* Assistant Counsel, for respondent.

OPINION BY JUDGE CRAIG, April 16, 1985:

Claimants Michael Manor, Inc. and Guilford Convalessarium, Inc., private facilities providing skilled nursing and intermediate care, appeal from a decision of the Pennsylvania Department of Public Welfare which denied part of the reimbursement they claimed for patient services performed in their fiscal year 1981. The department interpreted 55 Pa. Code §1181.73(b)[1] as requiring, when a facility has filed a

---

[1] 55 Pa. Code §1181.73 provides:

(a) A facility that enters into a termination agreement or agreement of sale is required to file a cost report with the Department within 30 days after the effective date of the termination or transfer and is required to provide financial records to the Department for auditing.

(b) When a final cost report is not submitted, the Department will make final cost settlement for that fiscal year at the last final *per diem* rate for which the Department has audited costs for that facility, provided that the rate established will not exceed the maximum *per diem* rate ceiling in effect when the facility was last audited.

late final cost report, that reimbursement determinations be based on costs for the last previous year audited. The question of law is whether that regulation applies only when a facility has filed no final cost report, and not when its filing is tardy.

A group of private investors had acquired Michael Manor and Guilford on December 31, 1981. Afterward, George Miller, comptroller for both facilities, realized that the facilities were required to file final cost reports with the department. On February 2, 1982 (after the thirty-day limitation for filing required by 55 Pa. Code §1181.73(a) had expired), and on two later occasions, Mr. Miller asked the department to send the proper final cost report forms. The forms did not arrive until mid-April; the facilities filed their reports on April 30 (Guilford) and May 13, 1982 (Michael Manor). As a result of final audits of both facilities, the department claimed that the facilities had been overpaid.[2] The department's Office of Hearings and Appeals affirmed the overpayment findings. This appeal followed.

*Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980), supplies two principles with respect to an administrative agency's interpretation of its own regulation. First, the interpretation is entitled to judicial deference unless it is clearly erroneous or inconsistent with the regulation interpreted. Second, the interpretation must be consistent with the underlying policy and objectives of

---

[2] On November 22, 1982, Michael Manor received the results of the DPW audit for 1981, which claimed an overpayment of $25,202.-33. On November 24, 1982, Guilford received its 1981 audit, which claimed an overpayment of $54,540.65. The claims arose from DPW's use of 1980 daily care rates in accordance with its interpretation of §1181.73(b), so that services that had been initially reimbursed at 1981 rates were later audited at *lower* 1980 rates.

the statute which authorized the regulation. *Id.* at 81, 422 A.2d at 482.

The regulation in question, 55 Pa. Code §1181.73 (b), provides that, "[w]hen a final cost report is *not* submitted" (emphasis added) the department must use the previous year's rates in its final audit. The word "not" could mean "never" or "not timely"; the regulation gives no guidance. The department's interpretation is not clearly erroneous because neither possible interpretation seems more likely to be correct than the other.

However, further analysis reveals that "not" can well mean "not timely." We must read subsection (b) of section 1181.73 in conjunction with subsection (a), which requires submission of a final report "within 30 thirty days after the effective date of the termination or transfer." 55 Pa. Code §1181.73(a). If that requirement is to carry any weight, the word "not" in subsection (b) must be construed to mean "not within thirty days." Otherwise, the department would have to wait indefinitely for a final cost report, with no guidance as to how long it should wait before it would be justified in using the previous year's rates to determine reimbursement. Although the regulation doubtless could have been drafted more carefully, administrative practicality requires the interpretation which the department here advocates. This result also is consistent with the federal legislation.[3]

No equitable considerations work to change the case in appellants' favor. Mr. Miller cannot complain that the department was tardy in sending the proper forms, because Mr. Miller did not request them until February 2, 1982, after the thirty-day limit of section

---

[3] *See* 42 U.S.C. §1396a(a)(37)(B), which requires that state Medicaid programs provide for review of payment claims to assure proper management of the program.

1181.73(a) had already expired. Our view is supported by the fact that, among the administrative sanctions provided in another portion of the Medical Assistance Manual,[4] there is no mention of a sanction for late filing of a final cost report.

Accordingly, we affirm.

### ORDER

Now, April 16, 1985, the orders of the Department of Public Welfare, File Nos. 23-83-9, 23-83-10, 23-83-11, and 23-83-12, dated November 18, 1983, are affirmed.

Judge WILLIAMS, JR., did not participate in the decision in this case.

---

[4] 55 Pa. Code §§1181.91-1181.96.