561 A.2d 68

**MEADOWS NURSING CENTER, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 1988.

Decided June 30, 1989.

Reargument Denied Sept. 12, 1989.

Jerry B. Chariton, Steven M. Greenwald, Shaffer & Chariton Wilkes–Barre, for petitioner.

Jason W. Manne, Asst. Counsel, Dept. of Public Welfare, Pittsburgh, Bruce G. Baron, Asst. Counsel, Harrisburg, Dept. Public Welfare, for respondent.

Before DOYLE and SMITH, JJ., and KALISH, Senior Judge.

DOYLE, Judge.

Petitioner Meadows Nursing Home (Meadows) [1] appeals [2] from an order of the Director of the Office of Hearings and Appeals of the Department of Public Welfare (DPW) denying Meadows reimbursement of costs under Pennsylvania's Medical Assistance program, Section 443.1 of the Public Welfare Code.[3] The issue before this Court is whether 55 Pa.Code §§ 1181.259(s), 1181.271(8) permitted DPW to disallow the portion of recognizable depreciation expenses incurred by Meadows with respect to nonallowable cost centers.

Meadows is a skilled nursing care facility providing services to Medicaid patients pursuant to the Medical Assistance program. The facility has 120 beds and DPW has

1. Meadows Nursing Center is a fictitiously registered division of Ecumenical Enterprises, Inc., a Pennsylvania nonprofit charitable corporation.

2. This opinion was reassigned to the opinion write on May 26, 1989.

3. Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended,* 62 P.S. § 443.1.

determined that 1.45% of the square footage of Meadows' building is allocable to nonreimbursable cost centers.[4]

Since 1977, allowable depreciation costs for facilities such as Meadows have been limited to a maximum construction cost per bed of $22,000. *See* 55 Pa.Code § 1181.259(s). Therefore, at 120 beds, Meadows' total cap for depreciation purposes was $2,640,000. DPW calculates the actual cost per bed based on the total project cost, and for the fiscal year ending June 30, 1984, determined that Meadows had actually spent $28,470.38 per bed for a total of $3,416,446.[5] However, rather than reimburse Meadows at the capped rate of $22,000 per bed, DPW disallowed 1.45% of this amount claiming it represented those costs attributable to nonallowable cost centers and reimbursed Meadows $21,681 per bed.

DPW cites 55 Pa Code § 1181.271(8) as its authority to reimburse Meadows at the reduced rate. That section provides:

> In determining the net operating costs of a facility, the Department will not allow expenses or revenues relating to:
>
> . . . .
>
> (8) The direct and indirect costs related to nonallowable cost centers including gift, barber, beauty, flower and coffee shops, homes for administrators or pastors, convent areas, and nurses' quarters. . . .

In effect, DPW argues that Section 2281.271(8), read in conjunction with 55 Pa.Code § 1181.259(a), which recognizes depreciation on capital assets used to provide compensable services as an allowable cost, permits the interpretation that the nonallowable cost figure should be adjusted against the cap of $22,000. Meadows argues that this interpretation by DPW is an abuse of discretion; that the

---

4. 55 Pa.Code § 1181.271(8) defines nonallowable cost centers as including gift, barber, beauty, flower and coffee shops, homes for administrators or pastors, convent areas and nurses' quarters. Meadows does not dispute that 1.45% of its building space is so allocable.

5. These are Meadows' actual figures *after* the deduction of nonreimbursable costs.

above-cited regulations do not specify this methodology; and that the nonallowable costs figure of 1.45% was improperly applied to the cap. It was the recommendation of the hearing officer that DPW's methodology was erroneous. The Director of the Office of Hearings and Appeals, however, while accepting the recommendation of the hearing officer sustaining Meadows' appeal regarding other costs which DPW had denied (costs which are not in issue in this appeal), nevertheless rejected this recommendation regarding the nonallowable cost centers. Hence, this appeal.[6]

In *Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 422 A.2d 480 (1980), the Supreme Court outlined two principles with respect to review of an agency's interpretation of its own regulations. First, the interpretation is entitled to judicial deference unless clearly erroneous or inconsistent with the regulation interpreted. Second, the interpretation must be consistent with the underlying policies or objectives of the statutes which authorized the regulation. The methodology employed by DPW in the case at hand is not clearly specified in 55 Pa.Code § 1181.271(8). This Court finds, however, that DPW's interpretation of the pertinent regulations is totally unreasonable. This Court has previously held that deference to an agency's unreasonable interpretation of its own regulations is not required. *Leader Nursing Centers, Inc. v. Department of Public Welfare*, 82 Pa. Commonwealth Ct. 53, 475 A.2d 859 (1984). As such, its interpretation is *not* controlling.

The $22,000 per bed maximum, or "cap," for reimbursable expenses is an arbitrary sum imposed only because of fiscal policy. Either the Commonwealth does not have sufficient funds to pay for all reimbursable expenses, or, it does not wish to spend any more than the cap allows. This policy may or may not be reasonable; nonetheless, it is not our

6. This Court's scope of review is limited to a determination of whether the adjudication is supported by substantial evidence, is in accordance with the law, or whether any constitutional rights were violated. *Harston Hall Nursing & Convalescent Home, Inc. v. Department of Public Welfare*, 99 Pa. Commonwealth Ct. 475, 513 A.2d 1097 (1986).

place to question. *Forbes.* However, Meadows actually spent $28,470.38 per bed, even without considering the costs of construction for the nonreimbursable costs. Therefore, in effect, 100% of the nonreimbursable costs *have already been excluded* ($28,470.38 × .0145 = $412.82). If DPW further reduces the $22,000 per bed maximum by 1.45% ($22,000 × .0145 = $319 or a maximum of $21,681), Meadows will suffer an additional unrecoverable cost which will be $319 per bed *below* the maximum level permitted to all other facilities. Such a method penalizes this facility and results in the depreciation cost for nonallowable cost centers to be deducted twice. Accordingly, we reverse the DPW's disallowance and, in effect, adopt the recommendation of the hearing officer.

## ORDER

NOW, June 30, 1989, the order of the Director of the Office of Hearings and Appeals of the Department of Public Welfare in the above-captioned matter is hereby reversed and the matter remanded to the Department for recomputation of the Petitioner's reimbursement in accordance with the opinion of this Court.

Jurisdiction relinquished.

SMITH, Judge, dissenting.

I respectfully dissent. As noted in the majority opinion, the methodology employed by DPW was not clearly specified by 55 Pa.Code § 1181.271(8). However, I do not believe that DPW's interpretation is clearly erroneous or inconsistent with state or federal legislation. *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980); *Michael Manor, Inc. v. Department of Public Welfare,* 88 Pa. Commonwealth Ct. 583, 490 A.2d 957 (1985). Although the effect of this methodology appears to penalize those facilities that provide additional amenities, I believe *Forbes Health System* requires that the agency interpretation be upheld.