Allied Services for the Handicapped, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued September 12, 1983, before President Judge CRUMLISH, JR. and Judges BARRY and BLATT, sitting as a panel of three.

*Joseph A. O'Brien, Oliver, Price and Rhodes,* for petitioner.

*Jeffrey Gonick,* Assistant Counsel, for respondent.

OPINION BY JUDGE BLATT, November 14, 1983:

This case comes here on appeal from a decision by the Department of Public Welfare (Department) denying expense reimbursements to Allied Services for the Handicapped, Inc. (Allied).

Allied operates a long-term care facility which offers both skilled nursing and intermediate care services. Prior to September 1, 1980, it submitted an M 11 cost report to the Office of Medical Assistance of the Department of Public Welfare. The Department reviewed this report and issued per diem reimbursement rates. In establishing the rates, however, the Department disallowed Allied's claims for both the interest it paid on money borrowed to pay interest during construction of the facility and the interest paid on establishing a debt reserve fund. Allied contends here that both interest expenses were "interest on capital indebtedness," and, are, therefore, reimbursable.

In *Department of Public Welfare v. Forbes Health Systems*, 492 Pa. 77, 422 A.2d 480 (1980), our Supreme Court limited our inquiry when we are addressing issues of an agency's interpretation of its regulations, and said:

> In reviewing an administrative agency's interpretation of its own regulations, courts are governed by a two step analysis. First, "in construing administrative regulations, the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." United States v. Larionoff, 431 U.S. 864, 872 (1977), quoting Bowles v. Seminole Rock Co., 325 U.S. 410 (1945). Second, the regulations "must be consistent with the statute under which they are promulgated." *Id.* at 873.

*Id.* at 81, 422 A.2d at 482. The analytical approach taken by the *Forbes* court in applying the legal test above described was to determine whether or not there was "specific authorization" in the regulations for the challenged activity and whether or not the agency's interpretation is "plainly inconsistent with the wording of the regulations." *Id.* at 82, 422 A.2d at 482.

Allied claims that the interest paid on money borrowed to pay interest is an "interest on capital indebtedness expense," and, therefore, must be reimbursed by the Department. Section IV, 10a of the Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities (Manual), 8 Pa. B. 2836-2837 (1978), however, provides the general rule for recovery for interest expenses, which is as follows: "Necessary and proper interest on both current and capital indebtedness is an allowable cost. However, there will be an upper limit on capital in-

terest of 3 points above the prime interest rate at the time funds are borrowed." And Section II of the Manual, 8 Pa. B. 2833 (1978), in pertinent part, defines interest on capital indebtedness as follows: "The cost incurred for funds borrowed for capital purposes. Examples: acquisition of facilities, equipment and capital improvements." The Department consequently concluded that, because the interest paid here was on money borrowed to pay interest, as opposed to the acquisition of facilities, equipment and the like, it was not paid on the capital indebtedness contemplated by Section IV, 10a of the Manual, and, therefore, was not recoverable. Bearing in mind our limited inquiry as prescribed in *Forbes,* for there was no specific authorization here for the interest on interest payments, and because the Department's interpretation is not plainly inconsistent with the wording of the regulation, we are constrained to uphold the Department's conclusion.[1]

Allied also claims that it should be reimbursed for the interest expense which it incurred when it set up a debt reserve fund because this was an interest on capital indebtedness. Section IV, 10b of the Manual, however, provides that: "Interest incurred on a loan made to satisfy a financial need of the facility will be recognized. Loans which result in excess funds or investments will not be considered necessary." The Department concluded that, because the debt reserve fund was neither used to finance the purchase of as-

---

[1] Allied contends that guidance should be acquired from the Medicare Provider Reimbursements Manual (HIM 15) contained in *Medicare & Medicaid Guide* (CCH) (1980). Section IV of the Manual, 8 Pa. B. 2834 (1978), however, indicates that such a course should only be taken "in the absence of specific instructions or guidelines in this Manual." The guidelines in the Manual here, however, are sufficient enough not to trigger the federal manual.

sets nor used to provide working capital for normal expenses, it was unnecessary within the meaning of 10(b). Again, because *Forbes* limits our inquiry, because there is no specific authorization in the Manual for recovery of the interest on the debt reserve fund and because we do not believe that the Department's interpretation was plainly inconsistent with the wording of the regulation, we must affirm the Department's decision on this point as well.

We, therefore, affirm the order of the Department.

ORDER

AND Now, this 14th day of November, 1983, the order of the Department of Public Welfare in the above-captioned matter is hereby affirmed.