506 A.2d 533

Mansion Nursing and Convalescent Home, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 4, 1986, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*John L. Heaton, Dilworth, Paxson, Kalish & Kauffman,* with him, *Jeffrey C. Apfelbaum, Apfelbaum & Apfelbaum,* for petitioner.

*Bruce G. Baron,* Assistant Counsel, with him, *John Kane* and *Jules S. Henshell,* for respondent.

OPINION BY JUDGE CRAIG, March 25, 1986:

Mansion Nursing and Convalescent Home, Inc. appeals a final order of the Office of Hearings and

Appeals of the Department of Public Welfare (DPW) which refused to reimburse Mansion for interest payments on that portion of a loan which Mansion used to purchase vacant land for a proposed expansion of its physical facility. Second, Mansion appeals DPW's reduction, by half, of the compensation paid to Mansion's owner, Jan Fabian, for his services, and DPW's complete disallowance of compensation to his wife, Helen Fabian. Finally, Mansion appeals DPW's affirmation of the attorney examiner's denial of Mansion's motion to consider an issue not raised originally on appeal.

This court must affirm unless we find that the adjudication is in violation of constitutional rights, is not in accordance with law, is in violation of the agency's regulations or procedures, or that any necessary finding of fact is not supported by substantial evidence. 2 Pa. C. S. §704.

### Interest Payments

In 1977, Mansion borrowed $720,000, and purchased two vacant lots with a portion of that loan, with the intent of expanding its facility. Not long after that purchase, the Department of Health granted certificates of need to several other nursing homes in the same area served by Mansion, thereby eliminating the need for Mansion to expand its facility. Mansion then put the recently-purchased real estate up for sale.

For the fiscal years ending 1977 and 1978, DPW classified the interest payments which Mansion made on that portion of the loan used for the purchase of the land as "interest on capital indebtedness", and reimbursed Mansion for those expenditures. However, for the fiscal years ending 1979 through 1981, DPW refused to treat those interest payments as allowable costs.[1]

---

[1] Section II of the Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities defines an "allowable cost" as:

Mansion first contends that DPW's sudden change in position regarding interest payments, with no change in the law or factual situation, creates a manifest appearance of arbitrariness. That argument is ineffective. Although the Commonwealth may have committed error earlier, that error does not later prevent it from acting in accordance with law. *Department of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 397 A.2d 779 (1979).

Mansion next contends that the interest paid on the loan which was used to purchase the vacant land is in fact "interest on capital indebtedness" and is accordingly an allowable cost under Section IV, 10.(a) of the Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities, 8 Pa.B. 2836 (1978). The manual defines "Interest on capital indebtedness" as:

> The cost incurred for funds borrowed for capital purposes. Examples: Acquisition of facilities, equipment and capital improvements. Generally, loans for capital purposes are long-term loans.

The hearing examiner concluded that DPW properly disallowed the interest expense relating to the purchase of land to be used for future development, relying upon section III of the manual which states:

> Allowable costs are those costs necessary and reasonable for the proper care of Medical Assistance patients.

8 Pa.B. 2833.

We note that Section IV D.10. of the manual, 8 Pa.B. 2836-37, similarly provides:

> Cost to be reimbursed under Medical Assistance which is the facility's actual audited allowable cost after appropriate adjustments are certified by state auditors.

8 Pa.B. 2832.

(d) Interest incurred on a loan made for a purpose reasonably related to patient care will be recognized.

In evaluating the attorney examiner's application of section III of the manual, we must determine whether there was specific authorization in the regulations for the challenged action and whether or not the agency's interpretation was plainly inconsistent with the wording of the regulations. *Department of Public Welfare v. Forbes Health Systems*, 492 Pa. 77, 422 A.2d 480 (1980). [2]

The attorney examiner acknowledged that Mansion purchased the vacant land with an intention to expand the nursing facility. However, he concluded that the interest related to the purchase of the land was not an allowable cost because "the land was never put to use in providing care to [medical assistance] patients." We agree that expenditures do not remain allowable costs when the product of those expenses has been withdrawn from dedication to the purpose of providing care for medical assistance patients. We therefore affirm the ruling on the interest payments relating to the land purchase.

---

[2] The *Forbes* court stated:

In reviewing an administrative agency's interpretation of its own regulations, courts are governed by a two step analysis. First, 'in construing administrative regulations, the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.' Second, the regulations 'must be consistent with the statute under which they are promulgated.' (Citations omitted.)

492 Pa. at 81, 422 A.2d at 482 (quoted in *Allied Services For the Handicapped, Inc. v. Department of Public Welfare*, 78 Pa. Commonwealth Ct. 297, 467 A.2d 646 (1983)).

The attorney examiner further stated, "The Medicaid Program should not bear the cost of an asset purchased by a Medicaid provider until that asset is used to provide patient care or work such as construction is initiated." Under the facts of the present case, we do not decide the precise point at which funds expended by a Medicaid provider become necessary and reasonable for the care of medical assistance patients.

*Compensation for Services*

We next consider whether the attorney examiner's conclusion that DPW correctly reduced the amount of compensation to be paid to Mr. Fabian from $42,500 to $18,280 and also correctly disallowed all of $12,350 to be paid to Mrs. Fabian, was plainly inconsistent with the wording of the controlling regulation.

Both Mr. and Mrs. Fabian submitted affidavits which stated the approximate amount of hours which each worked per week and the specific activities in which they engaged at Mansion. Mr. Fabian stated that his many functions included the supervision of maintenance, patient relations, approving payment of expenses, and overseeing the nursing staff. In addition, he personally served as the purchasing agent of supplies, food, and equipment. Mrs. Fabian helped to administer the social activities program at Mansion. She stated that she provided therapy to stroke victims, visited with patients and assisted them in performing personal activities.

Although DPW's audit report acknowledged that Mr. and Mrs. Fabian did perform the stated activities, DPW based its reduction of Mr. Fabian's salary and the complete denial of Mrs. Fabian's salary upon their failure to document those activities adequately in accordance with Section IV C. of the manual, 8 Pa.B. 2835, which provides:

> If owners of a facility or other persons perform
> actual necessary general management duties on

a full or part-time basis in lieu of a facility em-
ploye, their salary or compensation costs may be
included to the extent of their documented time
and involvement in the required management of
a facility.

and also, Section III B. of the manual, 8 Pa.B. 2833,
which reads:

Providers are required to maintain adequate fi-
nancial records and statistical data for proper de-
termination of costs payable under the program.
The report is to be based on financial and statis-
tical records maintained by the facility. Cost in-
formation must be current, accurate, and in suf-
ficient detail to support the claim for cost reim-
bursement. This includes all ledgers, books,
records, and original evidence of cost ... which
pertain to the determination of reasonable costs,
capable of being audited.

Although the Fabians provided descriptions of their ac-
tivities at Mansion, the attorney examiner's conclusion
was not plainly inconsistent with the import of the regu-
lation. The descriptions provided by the Fabians are not
equivalent to financial records and statistical data capa-
ble of being audited.

DPW approved the partial payment of Mr. Fabian's
salary based upon his role as dietary planner and pur-
chasing agent because Mansion employed no other per-
son in that position. Section IV C.1. of the manual, 8
Pa.B. 2835, specifically designates the purchasing agent
as a salaried position. Because Mr. Fabian filled that
position, DPW had a sound basis for authorizing com-
pensation as to that position without documented work
hours. However, Mrs. Fabian's services were not those
attributable to a salaried position; DPW hence rightly
denied compensation to her because of the lack of
documentation.

*Late Presentation of Additional Issue*

Regarding Mansion's final ground of appeal, Section VII 2, 10 Pa.B. 3108, states:

Facilities may appeal from:

. . . .

2. The findings of the auditors in the annual audit report;

. . . .

Each such appeal must be taken within thirty (30) days of the date of the letter of notification from the Department. Any findings of auditors which are not appealed shall not be questioned or set aside as part of any other appeal.

. . . .

The appeal notice shall specify the issues presented for review to the Hearings and Appeals Unit.

DPW's auditor was unable to account for $41,203 of another loan taken out by Mansion in 1977. Accordingly, she disallowed credit for interest on that loan also. Mansion did not mention that expense as part of its original appeal filed in 1982. Before the hearing examiner, Mansion presented a motion to consider this issue, although not raised originally on appeal. Mr. Fabian explained that Mansion's original appeal was prepared and filed by an accountant who neglected to appeal the ruling on the $41,203 loan. That accountant was later convicted of a criminal offense unrelated to Mansion's activities, but during those proceedings, and for seven months thereafter, Mansion did not have access to the auditor's worksheets. Only seven months after the accountant had filed the appeal, did Mansion discover that the accountant had failed to appeal the disallowance of the unaccounted-for expenditures.

In addressing Mansion's motion to consider the issue tardily raised, the examiner noted that Mansion's mo-

tion did not allege that the action of its agent prevented it from filing an appeal of the specific disallowance within thirty days from the date of the audit report. Accordingly, the attorney examiner denied the motion.

Despite these unfortunate circumstances, we must affirm the attorney examiner's decision because we detect no error of law.

### ORDER

Now, March 25, 1986, the order of the Department of Public Welfare, dated April 18, 1984, Nos. 23-82-305, 23-82-319, 23-82-320, is affirmed.