616 A.2d 149

**The UNIVERSITY OF PITTSBURGH–OF the COMMONWEALTH SYSTEM OF HIGHER EDUCATION–WESTERN PSYCHIATRIC INSTITUTE AND CLINIC, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent. (Two Cases)**

Commonwealth Court of Pennsylvania.

Submitted June 5, 1992 and June 19, 1992.

Decided Sept. 30, 1992.

66

Elaine M. Buzzinotti, for petitioner.

Jeffrey P. Schmoyer, Asst. Counsel, for respondent.

Before COLINS and KELLEY, JJ., and LEDERER, Senior Judge.

LEDERER, Senior Judge.

This court has consolidated these two factually similar cases for the sake of judicial economy.

The cases involve appeals by Petitioner, University of Pittsburgh, Western Psychiatric Institute and Clinic (WPIC) from the orders of:

(1) the Acting Secretary, Department of Public Welfare (DPW) who affirmed the order of the Acting Director of the Office of Hearings and Appeals (OHA) denying reimbursement of medical assistance payments (Medicaid) to WPIC for medical services rendered to patient D.H. from March 2, 1990 through March 7, 1990 (No. 2588 C.D.1991); and

(2) the Acting Director of DPW's OHA who denied reimbursement of Medicaid to WPIC for medical services rendered to W.D. from May 12, 1990 through May 18, 1990 (No. 2589 C.D.1991).

This court reverses both orders.

I. *Facts: D.H.*

DPW made the following relevant findings of fact on February 2, 1991 concerning the case of D.H.:

1. The patient, 24 year old [D.H.] was admitted at the [WPIC] facility with her family's encouragement on Friday March 2, 1990 describing a chronic history of depression with a recent increase in cocaine abuse.

2. The patient was admitted to the [WPIC] facility's acute psychiatric inpatient care on 3/2/90 and discharged on 3/7/90.

3. The patient demonstrated no manic symptoms, no abnormal behavior, no evidence of self-neglect and was alert and oriented. The patient's physical exam was within normal limits.

4. On 3/5/90, the [WPIC] facility submitted its request to the Department's Office of Medical Assistance for certification of the patient's hospital admission.

5. After discussion and consultation, the Office of Medical Assistance denied the requested certification on the basis that the admission was not medically necessary.

D.H., R.R. 4a.[1]

## II. *Facts: W.D.*

The OHA made the following relevant findings of fact on October 28, 1991 concerning the case of W.D.:

1. The patient, 41 year old [W.D.], was admitted to the [WPIC] facility on Saturday, 5/12/90 on a voluntary basis.

2. The patient's medical history and physical examination described the patient on admission as "patient is a 41 year old, separated, white male, with both a past and present history of IV drug abuse, who presents for the first time to WPIC with numerous effective symptoms, and also in a state of opium withdrawal and symptoms also referable to abstinence from cocaine. . . ."

3. On admission and throughout the hospital stay, the patient denied any suicidal or homicidal ideation.

4. On approximately 5/14/90, the [WPIC] facility submitted its request for certification for medical assistance payment for this patient's hospital admission.

5. On 8/22/90, the OHA denied certifying this admission on the basis that the medical documentation failed to substantiate that inpatient psychiatric hospitalization was medically necessary.

W.D., R.R. 76–77a.

## III. *DPW and OHA Determinations*

On February 20, 1992, DPW determined that WPIC failed to meet its burden of proof that the admission of D.H. to

---

1. Because these cases are consolidated, with two separate records, citations to the reproduced record in No. 2588 will be prefaced "D.H., R.R." and citations to the reproduced record in No. 2589 will be prefaced "W.D., R.R."

WPIC's inpatient psychiatric care facility was medically necessary. Similarly, on October 28, 1991 the OHA determined that WPIC failed to meet its burden of proof that the admission of W.D. to WPIC's inpatient psychiatric care facility was medically necessary.

Based on the notes provided by the physicians at WPIC, DPW and the OHA reasoned that D.H. and W.D., respectively, did not need psychiatric care but only needed drug detoxification care. DPW and OHA also rejected WPIC's contention that all patients with drug/alcohol *and* psychiatric symptoms are appropriate and compensable candidates for inpatient psychiatric hospital care.

Accordingly, DPW and OHA concluded that WPIC was not eligible for reimbursement of Medicaid payments by DPW pursuant to 55 Pa.Code § 1151.48. Under Section 1151.48, Medicaid payment is not made to a private psychiatric hospital for hospital care of a condition which does not require psychiatric help. DPW and OHA determined, respectively, that D.H.s' and W.D.'s conditions were not psychiatric in nature and therefore non-compensable in accordance with Sections 1151.48(a)(9) and 1151.48(a)(10).[2]

## IV. *Discussion*

The sole issue presented for review in these cases is whether DPW and OHA erred in concluding that patients D.H. and W.D. needed only drug detoxification medical services and not psychiatric care services, thereby making WPIC's services non-reimburseable by Medicaid.[3]

2. Section 1151.48(a)(9) provides that Medicaid payment is not made to a private psychiatric hospital for:
   Unnecessary admissions and days of care due to conditions which do not require psychiatric inpatient hospital care, such as, "rest cures" and room and board for relatives during a recipient's hospitalization.
   Section 1151.48(a)(10) provides in pertinent part that Medicaid payment is not to be made to a private psychiatric hospital for:
   Days of care for recipients who no longer require acute psychiatric inpatient care....
   55 Pa.Code § 1151.48(a)(9) and (10).

3. This court's scope of review is limited to determining whether the DPW and OHA adjudications are in accordance with the law as well as agency regulations or procedures, whether any constitutional rights

Initially, no party disputes that WPIC is a private psychiatric hospital affiliated with the University of Pittsburgh which is entitled to Medicaid from DPW when WPIC provides "acute psychiatric services" to medical assistance patients pursuant to 55 Pa.Code § 1151.62.[4] Further, no party disputes that D.H. and W.D. are medical assistance patients eligible for Medicaid payment.

■ WPIC contends that at the time of D.H.'s and W.D.'s evaluations, both patients manifested symptoms reflective of both a psychiatric *and* drug substance abuse diagnosis, and therefore, WPIC is entitled to reimbursement for such services pursuant to DPW's own regulations and directives. This court notes that 55 Pa.Code § 1151.62 entitles private psychiatric hospitals such as WPIC to Medicaid payments from DPW providing that the medical services rendered were "acute psychiatric services."[5] Section 1151.62 does not discuss whether psychiatric hospitals are entitled to Medicaid if the services rendered are both psychiatric and drug/alcohol detoxification treatments in nature.

WPIC specifically introduced into evidence a letter dated September 29, 1986 written by Gerald Radke, a high ranking

were violated, and whether the findings of fact are supported by substantial evidence. *Mansion Nursing and Convalescent Home v. Department of Public Welfare*, 96 Pa.Cmwlth.Ct. 143, 506 A.2d 533 (1986), *appeal denied*, 514 Pa. 644, 523 A.2d 1133 (1987). Moreover, WPIC bears the burden of proof in challenging an action or finding of DPW and OHA's auditors. *Harston Hall Nursing and Convalescent Home v. Department of Public Welfare*, 99 Pa.Cmwlth.Ct. 475, 513 A.2d 1097 (1986).

4. 55 Pa.Code § 1151.62, which outlines the requirements for certification of need for admission, provides in pertinent part:
   (a) If a recipient is age 21 or over, the attending or staff physician shall certify on the medical record either at the time of admission or on the first day of a benefit period, where applicable, or upon application for MA [Medical Assistance/Medicaid] that acute psychiatric services in a psychiatric hospital are needed.

5. This court notes that under Section 1151.62, "acute psychiatric services" is defined by Section 1151.2 as:
   Psychiatric services rendered in response to a severe psychiatric condition requiring intervention in order to bring the patient's symptoms under control.

official of DPW, which stated that under DPW's own Medical Assistance Bulletin 13–85–04:

[F]or cases with both a drug or alcohol detoxification diagnosis and a psychiatric diagnosis, reimbursement will be made regardless of which diagnosis is the primary diagnosis.

D.H., R.R. 32a.

Therefore, DPW's own Bulletin mandates reimbursement for medical assistance patients admitted to a private psychiatric hospital with *both* a drug/alcohol and psychiatric diagnosis.

DPW did not dispute the contents of Gerald Radke's letter concerning the Medical Assistance Bulletin 13–85–04 in their submitted briefs. Thus, this court concludes that if D.H. and W.D. did indeed require *both* drug/alcohol and psychiatric treatment, then WPIC would be entitled to medical reimbursement under the DPW Medical Assistance Bulletin 13–85–04 directives.

While WPIC specifically contends that D.H. and W.D. required *both* drug detoxification and psychiatric care treatment, DPW and OHA specifically contend that D.H. and W.D. needed only drug detoxification care. After a careful analysis of the record, this court believes DPW and OHA's conclusions that D.H.'s and W.D.'s admissions were for drug abuse and not psychiatric care is not supported by substantial evidence and therefore cannot be upheld.

DPW relies entirely on the testimony of their own physician, Dr. Hume, who testified ten months following D.H.s' admission to WPIC and eighteen months following W.D.'s admission to WPIC. In both cases, Dr. Hume, in turn, relied entirely on the record and the notes of the attending physicians at WPIC to draw his conclusion that D.H. and W.D. needed only drug abuse treatment. Dr. Hume testified that D.H.s':

... cocaine abuse and dependence certainly is responsible for the symptoms and complaints of [D.H.] which cleared in approximately 48 hours which is what one would ordinarily expect with cocaine and that's from both a needs and

economic perspective that [D.H.] would have more appropriately been treated in a detox facility.

D.H., R.R. 69a.

Dr. Hume also testified as to W.D.'s condition:

The Department's position [DPW] is that neither of the Diagnostic Evaluation Center [WPIC] notes or the progress notes in this chart would warrant inpatient care and that [W.D.] should have been referred to detox services.

W.D., R.R. 101a.

Dr. Hume was not at WPIC on the days D.H. and W.D. were admitted.

The testimony and affidavits of the attending physicians at WPIC who cared for D.H. during a five day period from March 2, 1990 through March 7, 1990 and W.D. for a six day period from May 12, 1990 through May 18, 1990, however, completely contradict Dr. Hume's conclusions.

The records show that the attending physicians who treated D.H. and W.D. on the days they were admitted wrote several letters to DPW discussing both D.H.'s and W.D.'s need for psychiatric care on those particular days. The medical evidence submitted by the attending physicians at WPIC supports D.H.'s contention that she suffered clear symptoms of three major psychiatric disorders: (1) Major Depressive Syndrome, (2) Somatic Disorder, and (3) Psychosocial Stresses when she was admitted to WPIC. D.H., R.R. 16a.

The staff of physicians at WPIC diagnosed D.H. with Major Depressive Syndrome pursuant to the diagnostic criteria established by the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, Third Edition, Revised (1987).[6] The physicians at WPIC determined that

6. The diagnostic criteria set forth for Major Depressive Syndrome is that the patient must have had the minimum of five (5) of the following nine (9) symptoms present during the same two (2) week period, which represented a change from previous functioning; *and* it cannot be established that an organic factor *or* grief limited and maintained the disturbance *or* that the symptoms were superimposed on certain psychotic disorders *or* that certain psychotic symptoms were present in the absence of the following mood symptoms: (1) predominantly depressed mood; (2) markedly diminished interest or pleasure; (3) significant

D.H. suffered from more than the five required disorders for Major Depressive Syndrome enunciated by the American Psychiatric Association. D.H., R.R. 16–17a.

On the day D.H. was admitted to WPIC, the attending physicians wrote that she exhibited clear symptoms of hypersomnia, anorexia, anersia, increased irritability, social withdrawal, profound depression, dysphoric moodiness, and suicidal ideation. Based on these marked symptoms, the attending physicians concluded that D.H. suffered from Major Depressive Syndrome which is indicative of an "acute psychiatric" condition. D.H., R.R. 16a. Further, the physicians noted that D.H. also exhibited Somatic Disorder symptoms indicative of an acute psychiatric disorder. She showed symptoms of shortness of breath, headaches, dizziness, and fear of imminent death. D.H., R.R. 16a.

The record also shows that D.H. suffered from psychosocial stresses that buttress WPIC's contention that D.H. required psychiatric services on the day she was admitted to WPIC. D.H. testified that on the day she was admitted, she was unemployed, lived in inadequate housing, was a single parent of two children, had an abusive boyfriend, and had a family history of psychiatric illness. D.H., R.R. 16a–17a.

Similarly, when W.D. was admitted to WPIC, the attending physicians stated that he suffered clear symptoms of Major Depressive Syndrome based on the evidence presented by the attending physicians at WPIC and the diagnostic criteria set forth by the American Psychiatric Association.[7] W.D., R.R. 4a–5a. The physicians at WPIC determined that W.D. suffered from more than the five required disorders for Major

change in weight loss or appetite; (4) persistent insomnia or hypersomnia; (5) persistent psychomotoric agitation or retardation; (6) persistent fatigue or loss of energy; (7) feelings of worthlessness; (8) diminished ability to think or concentrate; (9) recurrent thoughts of death or suicidal ideation.

See American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, 3rd Edition, Revised 1987 (emphasis added). See also Harris, R.R. 13a–16a.

7. See note 6, supra.

Depressive Syndrome enunciated by the American Psychiatric Association. W.D., R.R. 4a.

On the day W.D. was admitted to WPIC, the physicians further explained that he exhibited clear symptoms of profound depression, dysphoric moodiness, difficulty in sleeping, poor appetite with a forty-pound weight loss, difficulty in concentration, poor self-esteem, self-neglect, slowing of cognitive process, sadness, tearfulness, motoric restlessness, and worthlessness of life. W.D. attempted suicide twice before being admitted to WPIC, and the admitting psychiatrist at WPIC determined W.D. to be "at actual risk" of attempting suicide, in view of his prior history, his lack of social support and stressful home environment. W.D., R.R. 4a–6a.

The medical evidence presented in the record almost entirely weighs in favor of WPIC in that it supports the medical conclusion that both D.H. and W.D. indeed suffered from both drug related and psychiatric conditions rather than a drug problem only.

This court notes that DPW's Medical Assistance Bulletin 13–85–04 explicitly states that a proper drug and/or psychiatric diagnosis during an initial treatment is not always possible. The Medical Assistance Bulletin also recognizes that because proper evaluation cannot begin until a patient is free from the influence of drugs, drug detoxification is a necessary ingredient of psychiatric evaluation. D.H., R.R. 33a–34a.

■ Undoubtedly, the attending physicians are in a better position than DPW or OHA to determine whether a patient needs drug detoxification and/or psychiatric care at the time of admission. This court believes neither DPW or OHA should second guess attending physicians who often make life and death decisions based on an initial examination of a frequently incoherent and possibly suicidal patient when he or she is admitted to an emergency room. Therefore, ultimate treatment must take precedence.

## V. *Conclusion*

The medical evidence in the record shows that DPW and OHA's conclusions are not supported by substantial evidence.

The medical evidence shows that both D.H. and W.D. were in need of acute psychiatric services that were rendered in response to severe psychiatric conditions requiring intervention in order to bring both patients' symptoms under control.

Therefore, the conclusions of DPW and OHA that Medicaid payment is not available pursuant to 55 Pa.Code § 1151.-48(a)(9) and (10) is in error. The order of the Acting Secretary of DPW in the case of D.H. and the order of the Acting Director of DPW's OHA in the case of W.D. are accordingly reversed.

## ORDER

AND NOW, this 30th day of September, 1992, the February 20, 1992 order of the Acting Secretary, Department of Public Welfare denying reimbursement of medical assistant payments for medical services in No. 2588 C.D.1991, and the November 7, 1991 order of the Acting Director of the Office of Hearings and Appeals of the Department of Public Welfare denying reimbursement of medical assistance payments for medical services in No. 2589 C.D.1991, are hereby reversed; and the Department of Public Welfare is hereby ordered to provide such reimbursement to the University of Pittsburgh Western Psychiatric Institute and Clinic.

Jurisdiction relinquished.