**Meda M. NIPPLE, t/a Meda Nipple Convalescent Home, Petitioner,**

v.

**PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 1996.

Decided March 26, 1997.

Reargument Denied May 15, 1997.

Kenneth A. Wise, Harrisburg, for petitioner.

Kathleen Grogan, Assistant Counsel, Harrisburg, for respondent.

Before SMITH and FRIEDMAN, JJ., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

Meda Nipple, t/a Meda Nipple Convalescent Home (Convalescent Home), petitions for review of an order of the Board of Claims (Board) that denied her claims for Medical Assistance (MA) reimbursement from the Department of Public Welfare (DPW) for fiscal years 1987 through 1990. The issues are whether the Board erred in finding that DPW's interpretation of its own regulations was valid; in making a per se denial of Nipple's cash expense and cancelled check claims; in disallowing Nipple's salary as the Convalescent Home's administrator; in denying compensation for Simon Nipple's laundry and maintenance services; in denying Nipple's claim for certain renovation costs; and in disallowing one-half of claimed vehicle expenses without a valid basis.

DPW normally conducts an audit in the nature of a desk review of the Convalescent Home's records at the facility. For the years 1987, 1988 and 1989, the Attorney General gathered Nipple's records for an investigation, and Thomas Babcock, an investigator for the Attorney General, audited the Convalescent Home's records. For fiscal year 1990, Patricia Bell, assisted by Patricia Utz, conducted DPW's desk audit at the facility. DPW then issued its settlement. The Board granted reimbursement for certain items DPW rejected, such as notary expenses, non-prescription drugs and Nipple's salary for

fiscal year 1990. The Board, however, agreed with DPW and disallowed reimbursement for Nipple's cash receipts and cancelled checks unaccompanied by invoices; Nipple's salary as administrator for the years 1987 through 1989; Simon Nipple's pay; renovation costs for the second floor of the premises; and travel expenses.[1]

Nipple initially contends that the Board erred in affording controlling weight to DPW's interpretation of its regulations. Nipple argues that DPW's policy of per se disallowance of cash receipts is invalid because it is unsupported by any sort of written policy; is clearly inconsistent with existing DPW regulations; and is so at odds with its existing published regulations that it denies Nipple due process of law. In response, DPW contends that this issue was not raised before the Board and is therefore waived. This Court, however, perceives the gravamen of Nipple's challenge throughout the proceedings to be that DPW acted inconsistently with its regulatory guidelines set forth in 55 Pa. Code Chapter 1181, governing the allowable cost reimbursement for skilled nursing facilities.[2]

Nipple contends that the Board erred in denying her cash expense claims because DPW's per se disallowance was not a reasonable interpretation of its guidelines. DPW's regulation found at 55 Pa. Code § 1181.213(c) provides in part:

> The financial records shall include all ledgers, books, records, and original evidence of cost (purchase requisitions, purchase orders, vouchers, vendor invoices, requisitions for supplies, inventories, time cards, payrolls, bases for apportioning costs, *and the like*) which pertain to the determination of reasonable costs and are audita-

ble. . . . *No cost will be allowed unless it is adequately documented to the extent that it is capable of being audited.* (Emphasis added.)

Nipple maintains that the cash receipts and cancelled checks listed in the Convalescent Home's books of account are "capable of being audited" within the meaning of 55 Pa. Code § 1181.213(c) and should not have been per se disallowed. DPW, to the contrary, maintains that unidentified cash receipts, without more, are not similar to invoices, requisitions "and the like" and therefore are not capable of being audited within the meaning of the regulation.[3]

Before the Board, Nipple presented the testimony of Dwayne W. Hudson, an experienced reimbursement consultant for approximately 35 nursing homes across the state. Hudson testified that in preparing Nipple's cost reports, he excluded all expenses listed as non-allowable under DPW's regulations. Hudson examined figures for the three years in question and did not notice anything that was irregular; he stated that if he had noticed anything that was inconsistent, he would have conducted a further review and analysis.

Nipple also presented the testimony of Norman Lauer, a certified public accountant, who helped to prepare the Convalescent Home's cost reports. He stated that cash receipts and cancelled checks without accompanying receipts are not per se incapable of being audited. Lauer noted that there are several steps that can be taken to determine the correctness of the figures in the books. These steps include comparing figures from one year to the next to check for any unusual fluctuations and, where uncertainties or inconsistencies arise, asking questions regard-

---

1. This Court's scope of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed and whether constitutional rights were violated. *Del–Car Automotive, Ltd. v. Pennsylvania State Police,* 154 Pa.Cmwlth. 535, 624 A.2d 262 (1993).

2. In *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980), the Supreme Court established a two-pronged test for reviewing an agency's interpretation of

its own regulations. First, the agency's interpretation must be considered controlling unless it is plainly erroneous or inconsistent with its regulations. Second, the regulations must be consistent with the statute pursuant to which they were adopted.

3. "Audit," which is not specifically defined in DPW's regulations, is defined, inter alia, as "a formal or official examination or *verification* of books of account. . . ." Webster's Third New International Dictionary 143 (1966) (emphasis added).

ing the expenditure. Lauer stated that he reviewed the Convalescent Home's books for the three fiscal years in question and found nothing out of line or proportion that could not be explained.

DPW's auditor Bell admitted on cross-examination that she relied on Babcock's audits for fiscal years 1987 through 1989 and that she did not conduct an investigation of Nipple's cash expenses for fiscal year 1990. Babcock found the large number of cash receipts to be suspect, specifically noting expenditures for toys, snack items and clothing he felt were inappropriate for a nursing home despite uncontradicted testimony that these items were in fact used by the patients. Bell stated that she did not investigate any of the cash receipts and that she also disallowed these expenses on the ground that there were an unreasonable number of cash receipts without invoices, which were not in an auditable condition. She admitted, however, that DPW regulations did not specify what sort of verification is necessary. Utz, who assisted Bell, testified that she performed many on-site audits where, if she came upon a questionable item, she would request someone to supply her with additional information. Utz further stated that DPW's normal procedure was not to deny any questionable receipt automatically but rather to request more information.

■ In accordance with *Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 422 A.2d 480 (1980), this Court concludes that DPW's interpretation of its regulations as requiring a per se disallowance of all cash receipts unaccompanied by invoices is plainly erroneous. DPW regulations governing auditing requirements of cost reports do not specify which type of audit is appropriate but require only that some type of audit be performed annually. *See Klingerman Nursing Center, Inc. v. Department of Public Welfare*, 73 Pa.Cmwlth. 470, 458 A.2d 653 (1983), *overruled in part on other grounds by Northwestern Institute of Psychiatry v. Department of Public Welfare*, 99

Pa.Cmwlth. 213, 513 A.2d 495 (1986) (the intent of the MA program, if not its mandate, is to reimburse health care facilities for the reasonable costs of providing patient care).

■ DPW regulations at 55 Pa. Code § 1181.74(b) and (c) provide that field audits be conducted in accordance with generally accepted auditing standards. As Lauer stated, generally accepted auditing standards include an investigation to verify the accuracy of questionable expenses. Moreover, both Hudson and Lauer testified that Nipple's books, including the cash receipts, are capable of being audited.[4] The same rationale also applies to Nipple's cancelled checks that were not accompanied by invoices. DPW attempted no investigation to verify these checks. As a result, this Court holds that the Board erred in disallowing Nipple's cash receipts and cancelled check claims without making any attempt to verify the expenses. In accordance with Hudson's testimony, however, any expenses for the patient's personal clothing must be disallowed as these items are not reimbursable under the MA program.

■ In the absence of proper documentation to support the claim for her salary as the Convalescent Home's administrator for fiscal years 1987 through 1989, Nipple relies on this Court's decision in *Mansion Nursing and Convalescent Home, Inc. v. Department of Public Welfare*, 96 Pa.Cmwlth. 143, 506 A.2d 533 (1986), *appeal denied*, 514 Pa. 644, 523 A.2d 1133 (1987). That case involved a situation where the claimants presented job descriptions of their activities but failed to document their hours adequately. DPW found a basis for awarding compensation for one position despite the lack of documented work hours. The Court noted that the facility employed no other person in that position. In applying the same rationale to the present case, this Court concludes that Nipple's salary claim must be granted. The evidence of record establishes that Nipple is the Convalescent Home's only administrator.

---

4. This Court further rejects DPW's assertion, based upon Babcock's testimony, that Nipple's cash receipts and checks are unreliable. The record indicates by undisputed testimony that Nipple put her cash receipts for nursing home expenses in a separate folder and marked those receipts. Although some receipts were marked for the wrong items, they were all nursing home expenses.

Although her daughter is also a licensed nursing home administrator, she has never performed any administrative duties.

■ Nipple contends that the Board erred in denying reimbursement for Simon Nipple's pay for laundry and maintenance work. Specifically, Nipple argues that the Board mistakenly applied the requirements of 55 Pa. Code § 1181.241(c), which apply only to salaries of a facility's administrator, comptroller, purchasing agent, personnel director, pharmacy consultant or other individual performing general supervisory or management duties. *See* 55 Pa. Code § 1181.241(a). This Court agrees. Simon Nipple's pay must be considered an allowable cost under 55 Pa. Code § 1181.212(c), i.e., laundry and maintenance expenses. Nipple presented Simon Nipple's work schedules, which indicate the total numbers of hours that he worked, and this claim likewise should have been allowed by the Board.

■ Nipple also challenges the Board's denial of her claim for the costs of renovating the second floor of the premises into a conference room. The Board found that the room was also being used for an apartment and disallowed the costs. Nipple maintains that there is insufficient evidence of record to indicate that the room is being used as an apartment. She notes that Babcock stated that at the time of his visit to the facility, there was no one living in the upstairs room and that there was no evidence that anyone had ever resided in that room. The only evidence to the contrary is Bell's testimony that the room looked like an apartment and Nipple's testimony that in case of severe weather, someone could stay there. This evidence is insufficient to support a finding that the upstairs room was being used for an apartment to the extent that costs of renovation should be disallowed under 55 Pa. Code § 1181.271(8).

■ Finally, Nipple contends that the Board erred in accepting DPW's disallowance of one-half of the depreciation costs for the Convalescent Home's vehicle, on the basis that it was being used in part for personal purposes. She cites *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board (Stevens),* 70 Pa.Cmwlth. 163, 452 A.2d 902 (1982), for the proposition that travelling employees do not leave the scope of their employment just because they stop to pick up a personal item. Although that case dealt with an employee's eligibility for workers' compensation benefits, the same principle applies in this case. Nipple and her employees have their own personal vehicles and do not use the Convalescent Home's vehicle for personal purposes. There is insufficient evidence to support the Board's finding that the Convalescent Home's vehicle was being used for personal purposes, and, consequently, the Board erred in disallowing one-half of Nipple's vehicle depreciation cost.

In view of the foregoing, this Court concludes that the Board erred in disallowing all of the contested costs claimed by Nipple, with the exception of expenses incurred for personal clothing of the patients. The order of the Board is reversed, and this case is remanded for a recalculation of allowable costs consistent with the foregoing opinion.

### ORDER

AND NOW, this 26th day of March, 1997, the order of the Board of Claims is hereby reversed, and this case is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.