632 A.2d 964

HEALTH CARE AND RETIREMENT CORPORATION, Twin-brook Medical Center, Sky Vue Terrace, Hampton House, Negley House, Shadyside Manor Nursing Home, Wallingford Nursing and Rehabilitation Center, Petitioners,

v.

DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued March 29, 1993.

Decided Oct. 8, 1993.

Joel M. Hamme, for petitioners.

Jason W. Manne, Asst. Counsel, for respondent.

Before SMITH and KELLEY, JJ., and LORD, Senior Judge.

SMITH, Judge.

Health Care and Retirement Corporation (HCR) petitions for review of the January 15, 1992 order of the Director of the Office of Hearings and Appeals (OHA), Department of Public Welfare (DPW), adopting the recommendation of the hearing examiner to deny HCR's appeal from Medicaid cost disallowances made after audits conducted by DPW. The issues HCR raises for review are whether, in calculating Medicaid

reimbursement due HCR's nursing facilities, DPW violated its regulations or reached an unreasonable result by allocating portions of the Medicaid depreciable bases of those facilities to assets that were already fully depreciated; and whether the hearing examiner and OHA erred by ruling upon certain issues that the parties had settled. DPW raises the issue of whether HCR is barred from challenging DPW's methodology in computing depreciation by the failure of the facilities' prior owners to appeal.

## I.

### (A)

HCR owns and operates a number of nursing homes in Pennsylvania[1] that participate in the Pennsylvania Medical Assistance (MA or Medicaid) program and provide skilled nursing and intermediate care services to Medicaid patients. Pursuant to DPW's regulations regarding cost reimbursement for such facilities, the allowable reimbursement is composed of three components: operating costs, depreciation on capital assets, and interests on capital indebtedness.[2] This appeal involves the reimbursement regarding depreciation on capital assets.

In 1985, HCR purchased the assets of the various facilities in question from Health Group Care Centers, Inc. (HGCC). Prior to HCR's purchase of the facilities, HGCC had owned the facilities as ongoing operations participating in the MA program and had obtained reimbursement for depreciation

1. These homes include Twinbrook Medical Center, Sky Vue Terrace, Hampton House, Negley House, Shadyside Manor Nursing Home, and Wallingford Nursing and Rehabilitation Center.

2. Reimbursement for skilled nursing and intermediate care services provided to MA patients at HCR's facilities were made pursuant to the regulations in DPW's Medical Assistance Manual For Allowable Cost Reimbursement For Skilled Nursing And Intermediate Care Facilities (Manual) found at 8 Pa.B. 2826–2838 (1978) and 10 Pa.B. 3106 (1980). However, the Manual was codified on July 1, 1983 at 55 Pa.Code § 1181.201–1181.274, with the provisions remaining substantially the same. Because this appeal involves periods both before and after July 1, 1983, reference will be made to the Pa.Code provisions for both periods.

with respect to the assets sold to HCR. HGCC had, in turn, purchased the assets of these facilities in the period between January 1982 and March 1984. HGCC's purchase of these facilities triggered recalculation of the facilities' depreciable bases and the amounts that would be reimbursed for depreciation and capital interest.

HCR's facilities ultimately suffered cost disallowances when DPW audited their MA cost reports. HCR and its facilities appealed these disallowances, raising numerous issues that covered various fiscal periods. These appeals were consolidated for hearing in January 1991 at which the parties informed the hearing examiner that they had settled most of the issues in these appeals, but there remained a dispute over whether DPW improperly adjusted certain depreciation and capital interest expenses when it computed the Medicaid depreciable bases of HCR's facilities. A second issue in dispute was whether DPW erred in disallowing capital interest on certain facility additions, but HCR has not raised this issue on appeal to this Court.

In a November 21, 1991 recommendation and adjudication, the hearing examiner concluded that DPW's adjustment allocation methodology was correct, and that DPW did not improperly adjust depreciation expenses. The hearing examiner noted that 55 Pa.Code § 1181.259(g) provides that the assigned useful lives used in computing the depreciation may not be changed, even if the facility is purchased as an ongoing operation; and that to allow a step-up on fully depreciated assets would require a "relifing" of those assets and would be in violation of the regulations. After addressing several issues which are not directly addressed in this appeal, the hearing examiner also concluded that HCR was barred from challenging the failure to step-up for depreciated assets "because no appeal was filed by the facility on [these] issues during the year in question ... [and] ... [t]he facility must appeal the Department's treatment of a transaction in the year in which the transaction occurred." Hearing Examiner Opinion, pp. 9–10. HCR appealed to OHA, which adopted the hearing examiner's recommendation.

■ This Court's scope of review is limited to a determination of whether the adjudication is supported by substantial evidence, is in accordance with the law, or whether any constitutional rights were violated. *Meadows Nursing Center v. Department of Public Welfare*, 127 Pa.Commonwealth Ct. 146, 561 A.2d 68 (1989). DPW's interpretation of its own regulations is entitled to judicial deference unless plainly erroneous or inconsistent with the regulation or contrary to the enabling statute. *Grandview Health Homes, Inc. v. Department of Public Welfare*, 122 Pa.Commonwealth Ct. 356, 552 A.2d 720 (1988). However, deference to an agency's interpretation of its own regulations is not required where that interpretation is unreasonable. *Meadows.*

### (B)

■ As a threshold issue, this Court must first address DPW's contention that HCR is barred from its challenge by the failure of the prior owner, HGCC, to appeal DPW's allocation methodology.[3] DPW asserts that an MA provider, in this case HGCC, must challenge DPW's accounting methodology during the first year in which it is applied, and since HGCC never challenged DPW's depreciation methodology, HCR stands in privity with HGCC and should acquire no greater rights than were possessed by HGCC. DPW relies upon *Restatement of the Law of Judgments 2d*, § 43 (1982), which states that a judgment in an action that determines interests in real or personal property has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon that party. DPW's argument is unpersuasive, as its allocations each year upon audit are not judgments determining interests in real property: rather, DPW's allocations only determine, ultimately, the MA reimbursement each facility is to receive in any given year of operation.

■ Moreover, it appears that DPW withdrew this issue as part of the parties' stipulation of partial settlement and did not

---

**3.** The record reflects that four of the facilities challenged DPW's depreciation methodology as to the initial years of HGCC's purchase of those facilities.

pursue it in subsequent administrative proceedings. Even so, DPW's argument fails because HCR is not challenging the methodology that was applied to HGCC. Instead, HCR is challenging the methodology DPW applied after HCR purchased the assets from HGCC. A facility has the right to appeal any adjustment with which it is dissatisfied. *Harston Hall Nursing & Convalescent Home, Inc. v. Department of Public Welfare*, 99 Pa.Commonwealth Ct. 475, 513 A.2d 1097 (1986). DPW's actions in this matter were tantamount to an adjustment from which HCR had a right to appeal.

## II.

HCR's primary argument is that DPW's methodology for allocating an acquired facility's depreciable basis among its assets is inconsistent with DPW regulations, reaches an unreasonable result, and conflicts with applicable case law. Pursuant to 55 Pa.Code § 1181.259(a), depreciation on capital assets used to provide compensable services to MA recipients is an allowable cost. The amount of annual depreciation shall be determined by the "straight-line method" by first reducing the costs of the assets by any salvage value and then dividing by the number of years of useful life of the asset. 55 Pa.Code § 1181.259(e). The method and procedure used, including the assigned useful lives, for computing depreciation shall be applied from year-to-year on a consistent basis and may not be changed, even if the facility is purchased as an ongoing operation. 55 Pa.Code § 1181.259(g).[4] The cost basis for depreciable assets is determined by subtracting all depreciation that was taken or could have been taken by all prior owners from the lower of the purchase price or the fair market value, established at the time of sale based on the lowest of two or more bona fide appraisals at the time of sale. 55 Pa.Code § 1181.259(m). DPW may use a useful life of the asset consistent with the prior owner's assignment. *Grandview.*

4. In *Suburban Manor/Highland Hall Care Center v. Department of Public Welfare*, 146 Pa.Commonwealth Ct. 129, 604 A.2d 1185 (1992), this Court noted that the clear intent of this section is to ensure continuity in the determination and reimbursement of depreciation costs.

The methodology DPW applied in the present matter is similar to that described in *Suburban Manor/Highland Hall Care Center v. Department of Public Welfare,* 146 Pa.Commonwealth Ct. 129, 604 A.2d 1185 (1992). In that case, DPW allocated the total purchase price for each of two health care facilities by reference to the cost for each of the fixed asset categories entered on the prior owners' final cost report. The cost of each asset category was divided by the total cost to obtain percentages, and each percentage was then multiplied by the total purchase price to obtain the allocated amount for each category. This Court in *Suburban Manor* held that such a method did not improperly allocate purchase prices among the depreciable assets. Similarly, in *Homestead Nursing & Convalescent Home v. Department of Public Welfare,* 135 Pa.Commonwealth Ct. 47, 579 A.2d 440 (1990), *appeal denied,* 530 Pa. 648, 607 A.2d 257 (1992), DPW apportioned the depreciable cost basis to each asset based upon a ratio established by the prior owner.

Whereas *Homestead* and *Grandview* dealt with DPW's authority to calculate the cost basis of *depreciable* assets, the present matter presents a unique situation because DPW allocated sizable portions of the depreciable bases of the facilities to assets in the nature of fixed and movable equipment, still being used, that were already fully depreciated from a Medicaid standpoint. This approach presents problems in that it ignores the question of whether a particular asset has any remaining useful life at the time of the acquisition. Once an asset's useful life is established by a previous owner, it cannot be changed by that owner or by subsequent owners; thus an asset cannot be "relifed". *Suburban Manor; Homestead.* If asset lives were permitted to be changed, the method and procedure of calculating depreciation would not be consistent. *Suburban Manor.* Although DPW may apportion Medicaid depreciable cost bases to each asset based upon a ratio established by the prior owner, *Homestead,* the question becomes whether it is reasonable to do so with respect to assets whose useful lives have been extinguished and which have been fully depreciated.

DPW correctly argues that the regulations prohibit a purchaser from relifing a purchased asset and require that a new owner utilize the prior owner's assigned asset life. DPW asserts that the intended effect of the relifing prohibition is to deny HCR depreciation on assets that had been fully depreciated by the prior owner, precisely because those assets are still being used and retain a fair market value. However, it is apparent that HCR is neither seeking to obtain additional reimbursement on fully depreciated assets, nor does it ask that the entire purchase price for the facility be used as the depreciable basis. HCR is also not seeking to assign a new useful life to the assets, as the petitioner sought to do in *Grandview.*

Instead, HCR is clear in its assertion that DPW may not allocate a portion of the facilities' Medicaid depreciable basis, which is necessarily lower than the purchase price, to fully depreciated assets where the depreciation taken on those assets has already been subtracted when the Medicaid depreciable basis was computed. Furthermore, HCR clearly argues that, despite DPW's assertions to the contrary, DPW is unlawfully deducting the same costs twice by deducting the prior owner's depreciation when it calculates the facility's Medicaid depreciable basis and then allocates part of that depreciable basis to fully depreciated assets, but refuses to recognize the depreciation on that portion of the allocation because those assets were completely depreciated by the prior owner, a factor that was already taken into account when the depreciable basis was set.

As support, HCR relies upon *Meadows,* in which this Court held that DPW's interpretation of the pertinent regulations was totally unreasonable. *Meadows* involved a facility which had been constructed for an amount in excess DPW's limitation of $22,000 per bed on depreciable assets, resulting in a Medicaid depreciable basis capped below the actual construction cost of the facility. After making this adjustment, DPW further disallowed an additional 1.45% of the depreciable basis on the grounds that some of the costs were attributable to non-allowable cost centers. As here, the facility contended

that the regulations did not specify DPW's allocation methodology and that its interpretation was an abuse of discretion, with which this Court agreed. This Court determined that when DPW applied the cap, it had already excluded the nonreimbursable costs. Thus, DPW's further allocation of additional sums to non-allowable cost centers was improper because it penalized the facility and resulted in the depreciation cost for non-allowable cost centers to be deducted twice.

■ The instant case presents a situation logically similar and more troubling than that presented in *Meadows*. DPW has effectively rewritten the provision in 55 Pa.Code § 1181.-259(m)(1) to mean that the Medicaid depreciable basis may be further reduced by allocating portions of the basis to fully depreciated assets. Pared to its essence, DPW's methodology automatically applies the percentages originally assigned among buildings, land, and equipment of the prior owner to the new owner in such a manner that the equipment, which had been fully depreciated under the prior owner, once again has a value, but these percentages fail to take into account the prior owner's depreciation. By so doing, DPW has effectively "relifed" the equipment assets, but then refuses to allow depreciation on those assets.

■ Under such a scheme, the facility is thus denied depreciation for the building and the land since the Medicaid depreciable basis is correspondingly lower. As this Court found in *Meadows*, such an interpretation of the pertinent regulations is unreasonable. As HCR notes in its brief, it is not consistent to assume, as DPW's allocation methodology does, that an asset has no value and no remaining useful life in one year, and yet has value, but no useful life in the next year. It is equally inconsistent to assume that a depleted asset representing zero percent of the total depreciable basis in one year gains value in the next year.[5] Accordingly, the OHA

5. HCR also argues that the hearing examiner and OHA decisions must be vacated to the extent that they ruled on issues settled by the parties. DPW has not responded to this issue in its brief. A review of the hearing examiner's decision and the parties' partial settlement reveals that the hearing examiner did indeed address issues beyond the pur-

order is reversed as to its adoption of the hearing examiner's recommendation to affirm DPW's depreciation allocation methodology, and this case is remanded for recomputation of reimbursement due HCR consistent with this opinion.

## ORDER

AND NOW, this 8th day of October, 1993, the order of the Director of the Office of Hearings and Appeals adopting the hearing examiner's recommendations as to the Department of Public Welfare's depreciation allocation methodology is reversed and this case is remanded to the Department for recomputation of reimbursement due Health Care and Retirement Corporation in accordance with this opinion.

Jurisdiction relinquished.

view of the two issues presented for his review. As a matter of course, judicial policy favors the settlement of legal disputes and in the absence of fraud or mistake the courts will enforce a settlement agreement. *Miller v. Clay Township*, 124 Pa.Commonwealth Ct. 252, 555 A.2d 972 (1989). The precise scope of the hearing examiner's transgressions need not be elaborated upon here. Suffice it to say that to the extent he addressed non-existent issues over which there was no live controversy, the hearing examiner's findings and conclusions are of no legal effect.