IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kalkreuth Roofing and Sheet Metal, Inc. :
                                  :
           v.                  :    No.   751 C.D. 2022
                                    :
West Jefferson Hills School District and :    Submitted: November 6, 2023
Gito, Inc. d/b/a Nello Construction     :
                                    :
Appeal of: Gito, Inc. d/b/a Nello       :
Construction Company                 :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL WOJCIK, Judge
                HONORABLE MARY H. LEAVITT, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                      FILED: December 22, 2023

Gito, Inc. d/b/a Nello Construction Company (Nello) appeals from the June 15, 2022 order of the Court of Common Pleas of Allegheny County (trial court), which granted the Motion to Enforce Settlement Agreement (Motion) filed by Appellee Kalkreuth Roofing and Sheet Metal, Inc. (Kalkreuth). Upon review, we affirm.

## I.     FACTS AND PROCEDURAL HISTORY

Kalkreuth filed the underlying action on June 25, 2021. In its complaint, Kalkreuth averred that West Jefferson Hills School District (the School District) entered into a contract with Nello for the construction of a new high school (the "Project"). (Reproduced Record (R.R.) at 8a.) Kalkreuth subcontracted with Nello to provide roofing for the Project, including labor and materials, in exchange for payment from Nello in the amount of $2,670,000.00 (the "Subcontract"). *Id.* at 8a-9a. Kalkreuth alleged that errors made by Nello caused Kalkreuth to experience delays in completing its work on the Project, which caused it to incur additional costs. *Id.* at 9a-13a.

Kalkreuth further alleged that Nello approved approximately $30,000.00 in change orders, bringing the Subcontract value to approximately $2.7 million. *Id.* at 13a. Kalkreuth contended that, as of the filing of the complaint, Nello had paid approximately $2.4 million to Kalkreuth, leaving an outstanding Subcontract balance of approximately $300,000.00. *Id.* Kalkreuth accordingly brought claims against Nello for breach of contract and violations of the Commonwealth Procurement Code, 62 Pa. C.S. §§ 101 – 2311. *Id.* at 11a-12a. Kalkreuth also asserted an unjust enrichment claim against the School District. *Id.* at 13a.

Nello disputed the claims and asserted a breach of contract counterclaim against Kalkreuth and a cross-claim against the School District. *See* Answer, New Matter, Counterclaim, and Cross-Claim, R.R. at 79a-89a. On April 27, 2022, counsel for Nello offered Kalkreuth $300,000.00 to settle all claims. *Id.* at 94a. On April 28, 2022, counsel for Kalkreuth accepted the offer, subject to the additional conditions that payment be received within seven days and the parties execute mutual releases. Counsel for Kalkreuth offered to prepare the formal written settlement agreement and requested that counsel for Nello "please let [him] know if [they] have a settlement." *Id.* at 94a, 109a. The same day, Nello's counsel responded that Kalkreuth's counsel could "draft the agreement if [he'd] like." Nello's counsel further advised: "I'd say payment within [seven] days of[ ] all signatures, but [the School District] might take a week or so to sign (if prior experience with the [School District] holds true)[.]"[1] *Id.* at 94a-95a, 117a.

---

[1] On September 29, 2021, Nello and the School District executed a settlement agreement regarding a separate lawsuit filed by Nello against the School District in the trial court. Pursuant to that agreement, Nello agreed to "indemnify, defend and hold [the School District] harmless from any of the claims asserted against [the School District]" by Kalkreuth in this litigation. (Motion, ¶ 2; Response to Motion, ¶ 2; R.R. at 93a, 163a.) Thus, pursuant to that agreement, any liability for any of Kalkreuth's claims against either Nello or the District in this action ultimately would be assessed against Nello.

Counsel for Kalkreuth thereafter drafted a Settlement Agreement and Mutual Release (the Settlement Agreement), dated May 4, 2022. *Id.* at 95a, 126a. The Settlement Agreement provides that, "[w]ithin seven (7) days of [the] execution of this [Settlement] Agreement, Nello will make payment to Kalkreuth in the amount of [$300,000.00 (Settlement Payment)]. *Id.* at 127a. It further provides that, "[w]ithin seven (7) days of the receipt and clearance of the Settlement Payment, Kalkreuth shall discontinue with prejudice the [l]awsuit." *Id.* The Settlement Agreement further requires that the parties "release, quit, and forever discharge each other . . . from any and all claims, demands, rights, causes of action, damages, losses, suits, judgments . . . of any nature whatsoever . . . in connection with the [l]awsuit, the Subcontract, or the Project." *Id.* at 127a-28a.

On May 4, 2022, counsel for Nello emailed counsel for Kalkreuth to notify him that Nello "is no[ ] longer going to be able to enter into the terms of the proposed [S]ettlement [A]greement as Kalkreuth [set forth on April 28, 2022]." *Id.* at 132a. On May 10, 2022, Kalkreuth filed the Motion, in which it contended that "[a]ll of the material terms of the settlement were agreed upon by all parties and the [S]ettlement [A]greement should be enforced as a valid contract in accordance with Pennsylvania law." *Id.* at 96a. In its response to the Motion, Nello denied that it committed to making payment within seven days, which period it contended was a material term of the Settlement Agreement. *Id.* at 163a. Nello further alleged that its bank had called in a loan and that it had several million dollars in outstanding debt it could not pay. *Id.* at 164a. For that reason, Nello contended that it could not make the Settlement Payment, never entered into a settlement agreement with Kalkreuth, and never signed the written Settlement Agreement. *Id.* at 164a-65a.

The trial court held a hearing on June 15, 2022. Kalkreuth did not present any witnesses, believing that the issue before the trial court was a purely legal question. *Id.* at 173a-74a. After argument on the record, the trial court entered an order granting the Motion and directing the School District and Nello to "work in good faith to finalize the terms of the Settlement Agreement [ ] . . . , execute the [Settlement] Agreement when finalized, and pay the $300,000.00 as required by the [Settlement] Agreement." *Id.* at 189a. The trial court did not award attorneys' fees. *Id.*

Nello filed the instant appeal on July 11, 2022, and the trial court issued its opinion pursuant to Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 1925(a) (Trial Ct. Op.) on November 23, 2022. The trial court provided the following rationale for granting the Motion:

> [Kalkrueth] and [Nello] engaged in various settlement negotiations and mediations throughout the course of this matter. At some point [Nello's] counsel emailed [Kalkreuth's counsel] that [Nello's] final offer [was] $300,000[.00], which was accepted by [Kalkreuth] with certain conditions. Additionally, [Kalkreuth] offered to prepare a settlement agreement. Shortly thereafter[, Nello] agreed to the suggested conditions and [Kalkreuth's] offer to prepare the [S]ettlement [A]greement. Subsequently, the [S]ettlement [A]greement was sent to [Nello] for execution but it would not execute [the Settlement Agreement], citing lack of financial resources.
>
> The [a]ppellate [c]ourts have held that a court must enforce the terms of a settlement agreement when the agreement contains all the requirements of a valid contract including an offer, acceptance, and consideration. *Mastroni-Mucker v. Allstate Ins[urance] Co.*, [ ] 976 A.2d 510, 518 (Pa. Super. [ ] 2009). Even if the agreement has not been reduced to writing, it is still an enforceable agreement if all the essential terms have been established. *Id.* at 518.

4

> Given the definite terms of $300,000[.00] for the resolution of the case, the [trial c]ourt entered the [o]rder of June 15, 2022, granting [Kalkreuth's] [M]otion . . . .

(Trial Ct. Op. at 1-2 (unpaginated); R.R. at 197a-98a.)

## II. ISSUES PRESENTED

There are three issues on appeal: (1) whether the trial court's June 15, 2022 order is appealable; (2) whether the Settlement Agreement is unenforceable due to Nello's inability to make the Settlement Payment; and (3) whether the parties reached a "meeting of the minds" and formed an enforceable contract.

## III. DISCUSSION

### A. Appealability

Although the parties did not initially raise the issue, this Court by Order exited March 22, 2023, directed the parties to address in their principal briefs the appealability of the trial court's June 15, 2022 order.[2]  Appealability implicates our subject matter jurisdiction, which "may be raised by the court *sua sponte* if necessary*." LeFlar v. Gulf Creek Industrial Park No. 2*, 515 A.2d 875, 879 (Pa. 1986).  Subject matter jurisdiction "cannot be obtained by consent of the parties, or by waiver or estoppel." *In re Borough of Valley-Hi*, 420 A.2d 15, 17 (Pa. Cmwlth. 1980).  Thus, "we are not only permitted, but required[,] to determine if the trial court's order is appealable."  *Brophy v. Philadelphia Gas Works & Philadelphia Facilities Management Corp.*, 921 A.2d 80, 86 (Pa. Cmwlth. 2007).

Nello argues that the trial court's June 25, 2022 order is appealable (1) as a final order disposing of all claims against all parties under Pa.R.A.P. 341(a) and (b)(1); and (2) as a qualifying collateral order under Pa.R.A.P. 313.

---

[2] Nello addressed the appealability of the trial court's order in its principal brief.  Kalkreuth did not, which omission we interpret as Kalkreuth's concession that the order is appealable.

Pursuant to Pa.R.A.P. 341(a), "an appeal may be taken as of right from any final order of a . . . trial court." Pa.R.A.P. 341(a). A "final order" is an order that "disposes of all claims and of all parties" or that is otherwise entered as a final order. *See* Pa.R.A.P. 341(b)(1), (3). Here, we conclude that the trial court's June 25, 2022 order is not a final order pursuant to Pa.R.A.P. 341(a) because it does not *dispose* of all claims against all parties. Rather, it directs that the parties work towards executing a final written settlement agreement, after the execution and performance of which Kalkreuth presumably will discontinue this litigation. This, therefore, is not a situation where litigants have executed a final, written settlement agreement and one of the parties to the agreement contends that another has breached it. Rather, the parties here arguably reached a settlement that was not reduced to a final writing. Until a written settlement agreement is executed and this action discontinued, the parties' claims remain pending. Thus, the trial court's order is not final under Rule 341(a). We are quick to note, however, that we do not herein decide that *all* orders enforcing settlement agreements are not final under Rule 341. We conclude only that the language of *this* order and the unresolved circumstances of *this* litigation preclude a finding of finality. *See Baumbach v. Lafayette College*, 272 A.3d 83, 88 (Pa. Super. 2022) (trial court order approving settlement agreement not final where agreement provided that parties would file a praecipe to settle and discontinue the action *after* receiving settlement payments).[3]

Nevertheless, we agree with Nello that the trial court's order qualifies as an appealable collateral order pursuant to Pa.R.A.P. 313(a). Under that rule, "[a]n appeal may be taken as of right from a collateral order of an administrative agency or

---

[3] Superior Court decisions are not binding on this Court, but may be cited for their persuasive value. *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

lower court." Pa.R.A.P. 313(a).  Rule 313(b) defines a "collateral order" as one that (1) is separable from and collateral to the main cause of action;  (2) involves a right that is too important to be denied review; and (3) presents a question such that if review is postponed until final judgment, the claim will be irreparably lost.  Pa.R.A.P. 313(b).

In determining first whether an order is separable from and collateral to the main cause of action, we must determine whether review of the order implicates the merits of the main cause of action.  *Commonwealth v. Wright*, 78 A.3d 1070, 1077 (Pa. 2013).  In other words, we examine "whether the issues appealed can be addressed without analysis of the underlying claims on the merits."  *Brophy*, 921 A.2d at 87. Where review of the order in question does not implicate or affect the merits of the underlying dispute, it is separable from and collateral to the main cause of action. *Wright*.  As for the second prong, "[a]n issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by the final judgment rule." *Geniviva v. Frisk*, 725 A.2d 1209, 1213 (Pa. 1999) (quoting *In re Ford Motor Co.*, 110 F.3d 954, 959 (3d Cir. 1997)).  "[I]t is not sufficient that the issue be important to the particular parties. Rather[,] it must involve rights deeply rooted in public policy going beyond the particular litigation at hand."  *Id.* at 1214.  Finally, under the third prong, we ask "whether a right is 'adequately vindicable' or 'effectively reviewable.'" *Geniviva*, 725 A.2d at 1213 (quoting *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878-79 (1994)).  This question "cannot be answered without a judgment about the value interests that would be lost through rigorous application of a final judgment requirement."  *Id.*

We conclude that the trial court's order satisfies all three collateral order prerequisites.  First, the trial court's order enforcing the Settlement Agreement clearly

7

is separate from and collateral to the underlying breach of contract claims among the parties. Second, there are at least two important rights or interests involved here: (1) the parties' mutual loss of the right to litigate their claims and/or defenses; and (2) the judicial policies favoring both the settlement of legal disputes and, absent fraud or mistake, the enforcement of settlement agreements. *Health Care and Retirement Corp. v. Department of Public Welfare*, 632 A.2d 964, 969 n.5 (Pa. Cmwlth. 1993). Third, the enforcement of this Settlement Agreement effectively ends the litigation between the parties and precludes any further discovery or development of Nello's claims. Given Nello's current and apparently distressed financial situation, waiting until after final judgment to permit an appeal could ultimately preclude Nello from either pursuing its contract claims or challenging the trial court's ruling on the Motion.

Thus, although this is a close case, we conclude that the trial court's order is an appealable collateral order. *See Vignetti v. Borough of Munhall* (Pa. Cmwlth., No. 571 C.D. 2016, filed June 9, 2017), 2017 WL 2536509, slip op. at 6-11 (unlike an order *declining* to enforce a settlement agreement, a trial court order *enforcing* a settlement agreement is an appealable collateral order because (1) it is separable from and collateral to the main cause of action; (2) forfeiture of the right to pursue a legal claim is of sufficient import to warrant immediate appellate review; and (3) if review is denied, plaintiffs' right to pursue relief from multiple defendants in a single proceeding would be lost.).[4] We accordingly have subject matter jurisdiction over this appeal and will proceed to consider Nello's substantive issues.[5]

---

[4] Unreported opinions of this Court issued after January 15, 2008, may be cited for their persuasive value. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures (IOP), 210 Pa. Code § 69.414(a).

[5] "When reviewing a trial court's decision to enforce a settlement agreement, our scope of review is plenary as to questions of law, and

**(Footnote continued on next page…)**

8

## B. Validity of Agreement

To maintain logical consistency, we address Nello's substantive arguments in reverse order. Nello argues that the trial court erred in finding that an enforceable settlement agreement existed because the parties did not finalize the terms governing the timing of payment. Nello contends that, because timing of payment was a material term, its absence from the parties' "meeting of the minds" precludes a finding that an agreement was reached and is enforceable. We disagree.

Under Pennsylvania law, a contract exists when parties exhibit mutual assent to the terms of an agreement. *Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Board*, 739 A.2d 133, 136 (Pa. 1999). Further,

> [i]f a settlement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement, even if the terms are not yet formalized in writing. The intent of the parties to a written contract is contained in the writing itself. Moreover, after the parties reach a meeting of the minds as to the essential terms of their agreement, the existence of gaps in the contract will not vitiate it. Thus, the law in this Commonwealth makes clear that if parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date.

> we are free to draw our own inferences and reach our own conclusions from the facts as found by the [trial] court. However, we are only bound by the trial court's findings of fact which are supported by [substantial] evidence. The prevailing party is entitled to have evidence viewed in the light most favorable to its position. Thus, we will only overturn the trial court's decision when [its] factual findings . . . are against the weight of the evidence or its legal conclusions are erroneous."

*Bennett v. Juzelenos*, 791 A.2d 403, 406 (Pa. Super. 2002) (internal citations omitted).

9

*Davis-Haas v. Exeter Township Zoning Hearing Board*, 166 A.3d 527, 535-36 (Pa. Cmwlth. 2017) (internal citations and quotations omitted). Agreements to settle are favored under Pennsylvania law. *Mastroni-Mucker*, 976 A.2d at 518.

We conclude that the parties agreed to the material terms of a settlement agreement, which included Nello's payment to Kalkrueth of $300,000.00 within seven days of the execution of the written Settlement Agreement, together with the mutual release of claims. Although Nello's counsel did not initially agree to payment within seven days of the *date* of a written agreement, he nevertheless agreed to all other proposed terms and suggested that payment be required within seven days of *execution* of a written agreement. Kalkreuth's counsel thereafter drafted the Settlement Agreement in accordance with that proposal. Thus, both the amount and timing of the Settlement Payment were terms *proposed by Nello's counsel* and accepted by Kalkreuth's counsel. The parties therefore agreed on material terms and entered into a valid and enforceable settlement agreement.

Further, even if the parties did not reach a "meeting of the minds" regarding the timing of payment, where all other material terms are agreed upon, as they were here, a reasonable time for payment will be implied. *See Hutchinson v. Pennsylvania State Employees' Retirement Board*, 738 A.2d 7, 16 (Pa. Cmwlth. 1999).[6] Any lack of a time-of-payment term thus would not preclude enforcement. As the trial court noted, it is clear in the record that the parties reached a settlement agreement and that Nello, after payment became inconvenient, sought to renege. *See* R.R. at 183a. The trial court did not err in finding that a valid and enforceable Settlement Agreement exists.

---

[6] It also is noteworthy that, during settlement negotiations, Nello's counsel suggested that Nello could make a settlement payment within a short time. *See* R.R. at 99a.

## C.     Impracticability of Performance/Frustration of Purpose

Nello secondly argues that, even if the parties entered into a valid Settlement Agreement, the Agreement cannot be enforced because Nello no longer has adequate funds to make the Settlement Payment. Nello contends that its financial woes both frustrate the purpose of such an agreement and render its performance impracticable. We again disagree.

The Restatement (Second) of Contracts addresses "impossibility" of performance due to impracticability and/or the frustration of a contract's purpose. Section 261 addresses discharge of performance due to impracticability:

> § 261. Discharge By Supervening Impracticability
>
> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 261 (Am. Law. Inst. 1981). "Impossibility of performance" means "not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, or loss involved." *In re Busik*, 759 A.2d 417, 423 n.9 (Pa. Cmwlth. 2000) (quoting *West v. Peoples First National Bank & Trust Co.*, 106 A.2d 427, 432 (Pa. 1954)). "Impossibility of performance," however, does not include mere inconvenience, even though it may work a hardship. *Id.* (citing *International Brotherhood of Firemen & Oilers, Local 1201, AFL-CIO v. Board of Education of School District of Philadelphia*, 457 A.2d 1269 (Pa. 1983)). "Nor does it include a party's financial inability to perform." *Id.* (citation omitted).

Section 265 of the Restatement (Second) of Contracts further provides for discharge of performance by supervening frustration:

§ 265. Discharge By Supervening Frustration

Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 265 (Am. Law Inst. 1981). "Thus, a court can excuse performance under a contract upon the occurrence of a truly unexpected event that thwarts the purpose or performance of a contract." *Step Plan Services, Inc. v. Koresko*, 12 A.3d 401, 412 (Pa. Super. 2010) (citation omitted). The Pennsylvania Supreme Court has summarized the principle of frustration as follows:

When people enter into a contract which is dependent for the possibility of its performance on the continual availability of a specific thing, and that availability comes to an end by reason of circumstances beyond the control of the parties, the contract is prima facie regarded as dissolved. . . . A court can and ought to examine the contract and the circumstances in which it was made, not of course to vary, but only to explain it, in order to see whether or not, from the nature of it the parties must have made their bargain on the footing that a particular thing or state of things would continue to exist. And if they must have done so, then a term to that effect will be implied, though it be not expressed in the contract.

*Greek Catholic Congregation of Borough of Olyphant v. Plummer*, 12 A.2d 435, 439 (Pa. 1940) (internal citations and quotation marks omitted). *See also Hart v. Arnold*, 884 A.2d 316, 334-35 (Pa. Super. 2005).

Here, Nello cites only to its own financial peril to justify the discharge of its performance under the Settlement Agreement, the material terms of which it proposed. Even assuming that Nello's financial troubles are as Nello alleges them to be, they do not qualify as a valid "frustration of purpose" or "impracticability" that

12

justifies nonperformance. *In re Busik*, 759 A.2d at 423 n.9; *see also Step Plan Services*, 12 A.3d at 413; *Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 948 (Pa. Super. 2004) ("It is well settled that that financial inability of a party to complete obligations under a settlement is not a basis for voiding the settlement."). Thus, the intervening "event" of Nello's *alleged* insolvency does not frustrate the purpose of the Settlement Agreement, which is to end the litigation without further expense to either party. That purpose remains legitimate and is not eliminated by the fact that Nello now argues that it is not financially capable of performing. Frustration of purpose and impracticability simply do not apply in this scenario, and for that reason, the trial court did not err in enforcing the Settlement Agreement.

## IV.   CONCLUSION

For the reasons set forth above, the trial court's June 15, 2022 order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kalkreuth Roofing and Sheet Metal, Inc. :
                                   :
          v.                     :   No. 751 C.D. 2022
                                     :
West Jefferson Hills School District and :
Gito, Inc. d/b/a Nello Construction    :
                                   :
Appeal of: Gito, Inc. d/b/a Nello     :
Construction Company            :

## _ORDER_

AND NOW, this 22nd day of December, 2023, the June 15, 2022 order of the Court of Common Pleas of Allegheny County hereby is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge